CARTER STEWART et al., Respondents, v. ESTATE OF THOMAS TURNER, Deceased, Appellant.

Kansas City Court of Appeals, June 14, 1915.

**PROBATE COURTS: Contracts: Claim for Services Rendered.** When parties enter into the employment of a person and accept money, etc., as their compensation, without complaint, they cannot after his death maintain a valid claim against his estate for services over and above what they were paid, especially where they not only fail to prove a contract of employment, but also utterly fail to prove any indebtedness from their employer to them under the terms of that contract.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

REVERSED.

*Gillespie & Conley, H. D. Murry* and *N. T. Gentry* for appellant.

*L. T. Searcy* and *Harris & Finley* for respondents.

JOHNSON, J.—Plaintiffs, who are husband and wife, filed the following demand in the probate court of Boone county, against the estate of Thomas Turner, deceased:

"Columbia, Mo., December 15, 1913.
"The Estate of Thomas Turner, Deceased.
To Carter Stewart and Annie Stewart, Dr.

To 244 weeks' joint services from October 10, 1908, to July 2, 1913, rendered at the instance and request of the deceased, as nurses, companions, housekeepers, farm managers and laborers at twenty-five dollars ($25.00) per week....................$6100.00

To amount due claimants for money paid and materials furnished deceased in defraying expenses of farm and household as per itemized statement hereto annexed and marked 'Exhibit A,'....................$ 476.70
                                                            _____
                                                            $6576.70

By amount of credits on account as per statement hereto annexed and marked 'Exhibit B'....................$1157.52
                                                            _____
Balance due claimants................$5419.18"

Itemized statements of the alleged disbursements of plaintiffs and of the credits were attached to the demand which was verified by the affidavit of plaintiffs. An answer filed by defendant, in addition to a general denial, pleaded a misjoinder of parties plaintiff and alleged that "whatever services were rendered the said Thomas Turner by the plaintiff Carter Stewart and whatever services were rendered the said Thomas Turner by the plaintiff Annie Stewart were fully paid for by the said Thomas Turner during his lifetime."

In the circuit court defendant demurred to the petition on the ground of a misjoinder of parties

and after the demurrer was overruled, filed a motion to elect, which also was overruled. Defendant answered and at the beginning of the trial renewed the objection which the court overruled, that, on the face of the petition "the services were not jointly rendered and that a joint claim cannot be here prosecuted and hence there is a misjoinder of the parties plaintiff."

At the conclusion of the evidence heard at the trial plaintiffs dismissed the second item of their demand and the claim for two-hundred-forty-four weeks joint service was submitted to the jury. The verdict was for plaintiffs in the sum of $750 and defendant appealed.

Thomas Turner died in Boone county July 2, 1913, at the age of ninety-three years. His second wife had died in January, 1908, and he continued to reside on his farm of one-hundred-twenty acres in Boone county, two step-daughters keeping house for him. Plaintiff Annie Stewart was his daughter and she and her husband Carter Stewart with their children, who were grown, were living in Oklahoma. In February, 1908, Mr. Turner fell ill and sent for his daughter who came and nursed him through this illness. She returned to her family in July and in the latter part of that month received a letter, which afterwards she lost, purporting to have been written at the request of Mr. Turner and requesting both plaintiffs to come and live with him and run his farm for him. Four witnesses testified to the contents of the letter which bore the signatures of Thomas Turner and Essie Evans and was in the handwriting of the latter. From their testimony it appears that the letter said nothing about compensation but merely requested plaintiffs to come and live with Turner and manage his farm.

Plaintiffs responded to his request and lived on the farm with him from October 12, 1908, to the date of his death July 2, 1913. Their evidence tends to show

that Mrs. Stewart performed the necessary household work, raised chickens, made butter and, in addition to the ordinary duties of a farmer's wife, nursed her father when he was ill and took special care in the preparation of his food. Mr. Stewart did the usual work of a farmer and assisted in nursing and caring for the old man. He slept in the latter's room on a couch to attend to his wants at night and to maintain heat in the room in winter, as Turner was very susceptible to colds. Generally speaking he performed the duties of a body-servant, some of which were quite offensive. Although subject to attacks of illness, Turner was unusually active for a person of his great age and was in full possession of his mental faculties. All of the business of the farm was transacted by Stewart in his name and under his orders. He was punctilious in the payment of his debts and careful in his business dealings, especially with reference to incurring obligations. He seemed to be well pleased with the services of plaintiffs and remarked to some of the witnesses that his son-in-law was the best hand he ever had. He allowed his daughter to sell butter and eggs and to keep the proceeds and whenever hogs or other farm products were marketed he invariably gave his son-in-law one-half the proceeds. The total amount of such payments received by Carter was $951.08. A witness introduced by defendant testified that after Turner's death and the discovery that he had not specially favored plaintiffs in his will, Carter remarked, "Father did give me half of the hog money and he thought he was paying me for my work but I didn't consider it anything." Another witness stated that during the relationship in question Annie had said that her father had replied to a request she had made for a more profitable arrangement for her husband, "if you and Carter ain't satisfied with what you are getting you can pull out. I can hire a man and his wife

for two hundred dollars a year to do everything you are doing.''

Of course such testimony from defendant's witnesses is not conclusive of the fact that the old man thought he was fully compensating plaintiffs for their services, but we mention it as a prelude to the statement that there are no facts and circumstances in proof from which a fair inference might arise that Turner understood plaintiffs were not being reasonably compensated for their services. Unquestionably he understood their relationship was upon a business basis and when he paid over to Carter one-half of the cash income of the farm and allowed his daughter to keep the proceeds of the dairy and poultry, he thought he was discharging his obligations to them in full. That they allowed him to remain in this belief without contradiction is manifest, even from their own evidence and in its last analysis, the whole case of plaintiffs is bottomed upon the theory that by requesting their services Turner in legal effect undertook to pay them the reasonable value of such services and they were entitled to go to the jury upon proof that such reasonable value exceeded the amount they had received as compensation.

We agree with plaintiffs that the evidence leaves no room for any other conclusion than that Turner had no thought of being the recipient of gratuitous service from his daughter and son-in-law but recognized an obligation to pay them. He understood that he was to pay for what he received and was not to be the pecuniary beneficiary of filial affection. The evidence does not present an instance where a contract to pay for services rendered at the request of the benefited party should be implied, but discloses facts and circumstances from which an express agreement should be inferred that plaintiffs were to be compensated for their services. The nature of the relationship created by the contract of the parties was that of master and

servants and during the whole period of its existence the master, after fixing the measure of his servants' compensation according to his own ideas of their deserts, punctually paid them their earnings, in the obvious belief that he was discharging his obligations to them in full.

Manisfestly they received these payments from time to time with full knowledge of his views on the subject of fair compensation and without protest or demur. Such acquiescence which settled into an unbroken course of conduct and dealing, covering a period of nearly five years, should be accorded no less effect than that of making this scale of wages fixed by the master an integral element of the express contract of hiring which bound both parties. Plaintiffs' own evidence leaves them in the position of having accepted these payments as in full discharge of their master's obligation, but with the undisclosed mental reservation that at the end of the service they would claim back pay according to their own ideas of the reasonable value of their services. Of course such position is untenable. Having agreed, as they did, to accept the master's wages as reasonable, they are bound by that agreement, regardless of what such services actually were worth. Usually in cases of this character there is evidence tending to show that the benefited party acknowledged to witnesses a pecuniary obligation on account of the services beyond what he had paid to the servant and which he expected to discharge, but here there is not only a complete absence of such evidence, but on the contrary, the declarations of the old man to witnesses, as well as his acts, show that he regarded plaintiffs as farm hand and housewife for whose services he was paying as they were rendered. Plaintiffs have not failed to prove a contract of employment but have utterly failed to prove any indebtedness from their employer to them under the terms of that con-

tract and the demurrer to the evidence should have been sustained.

The judgment is reversed.   All concur.