GRAYSONIA-NASHVILLE LUMBER COMPANY *v.* CARROLL.

Opinion delivered February 19. 1912.

1. RAILROADS—DUTY TO TRESPASSER ON TRACK.—The only duty a railroad company owes to a trespasser walking on its track is not to wilfully or negligently injure him after discovering his peril. (Page 465.)

2. TRIAL—PROVINCE OF JURY—CREDIBILITY OF WITNESSES.—The credibility of a witness is for the jury. (Page 468.)

3. SAME—PROVINCE OF JURY.—The jury, in weighing the testimony, have a right to draw all reasonable deductions from it warranted by their common knowledge of and experience with human affairs. (Page 468.)

4. NEGLIGENCE AFTER DISCOVERING PERIL—EVIDENCE—Where there was evidence tending to prove that one of defendant's brakemen

discovered the peril of the decedent in time by the exercise of due care to have avoided injuring her, a finding that defendant was negligent will be upheld.   (Page 468.)

5. TRIAL—OFFER OF EVIDENCE—COMPETENCY.—Where two causes of action were united in one action, evidence offered by defendant which was admissible in one cause but not in the other was properly excluded where the defendant did not ask that the testimony be limited to the cause to which it was applicable.   (Page 469.)

6. DEATH—DAMAGES—INSTRUCTION.—An instruction in an action for negligently killing plaintiff's interstate, to the effect that the jury should assess the damages at whatever sum they found from the testimony to be a fair and reasonable compensation, and that they should be guided by their judgment and discretion as jurors, is not susceptible of being construed to mean that they were to be guided by their judgment, instead of by the testimony, in assessing the damages. (Page 469.)

7. INSTRUCTIONS—SUFFICIENCY OF OBJECTION.—An objection to the language of an instruction should be specific.   (Page 469.)

8. HUSBAND AND WIFE—RIGHT OF HUSBAND TO RECOVER FOR WIFE'S DEATH.—Where a husband, by the wrongful killing of his wife, is deprived of her services and companionship, he suffers a legal injury, and is entitled to compensation therefor.   (Page 469.)

9. INSTRUCTIONS—REPETITION.—It was not error to refuse instructions already covered by the court's charge.   (Page 470.)

Appeal from Howard Circuit Court; *Jefferson T. Cowling,* Judge; affirmed.

### STATEMENT BY THE COURT.

This is an action by J. T. Carroll as administrator and J. T. Carroll in his individual capacity against the Graysonia-Nashville Lumber Company for the alleged negligent killing of his wife by one of the railroad trains of said company.

The defendant is a corporation organized under the laws of the State of Arkansas, and owns and operates a lumber plant and several railroad tracks in connection therewith near the town of Graysonia, in Clark County, Arkansas.   The defendant owns and operates log trains over a certain track into and through one of its camps about two and a half miles out of said town of Graysonia.   The camp and settlement was used by the defendant for the habitation of the employees and their families.   There were erected along the side of said railroad track about forty houses up and down the track for a distance of about 150 yards.   Mrs. Mollie Carroll and her husband, J. T. Carroll, the plaintiff, occupied one of these houses; her daugh-

ter, Mrs. Jack Rawlins, occupied another. The house of Mrs. Rawlins was fifty-eight feet on a straight line from the railroad track, and on a path along from it to the tracks it was eighty-four feet. Some time in the early part of January, 1911, Mrs. Carroll was at her daughter's house. About 2 or 3 o'clock in the afternoon she left there and started home. She was at the time an able-bodied woman about forty-five years old and in possession of all her faculties. She followed the track above referred to to the railroad, and then walked along the railroad track a distance of 112 feet to a trestle where she was overtaken by one of the defendant's trains and struck by it. She died on the next day, about 11 o'clock, from the effects of the injuries received.

James Shope, a boy between thirteen and fourteen years of age, saw the accident, and testified in regard to it substantially as follows: "I was down there near the scene of the accident and heard the train whistle at the branch over across the hill, and thought I would wait and see the train come in. I could not see it until it came over the hill about a quarter of a mile away. Before the train came in sight, Mrs. Carroll came on to the railroad track, and, without looking backward, walked along down the railroad track towards me. She was walking along at a moderate gait and never did look back until just before the train struck her. The train consisted of a Shay engine and three flat cars and was running backwards, the flat cars being in front of the engine. I saw a brakeman on the first flat car in front of the engine. He looked down the track at Mrs. Carroll and then off from her. He then was looking out towards a house, and I did not see him look back towards her again. Mrs. Carroll never did look back until just about the moment that the train struck her. She had walked about twenty-five yards down the track near to a small trestle before she was struck by the train. The train struck her before she got on the trestle. The train got about fifty or sixty feet beyond her before it stopped. The trainmen never did slack the speed of the train after Mrs. Carroll came on the track, nor did they warn her by blowing the whistle or giving her any other signal that the train was approaching."

James H. Gary testified: "I was unloading coal at the chute about seventy-five yards or eighty yards from where Mrs.

Carroll was struck. Mrs. Carroll was between me and the train. I saw a brakeman sitting on some groceries on a flat car next to the tender. I never paid any attention to what direction the brakeman was looking. When I again looked, the brakeman was walking down the flat car towards its front. Mrs. Carroll was walking along down the track,, and had her back to the train, and the brakeman had his face towards her the way she was going. There was no obstruction between him and her, and I heard no bell nor whistle. I did not see the train when it struck her, and don't know whether it slowed up or not. The next I saw was after the woman was struck by the train when I saw the brakeman running down to where she was."

J. T. Carroll (plaintiff) testified; The deceased and I had been married for twenty-six years, and had seven children. She was a good wife, and our relations were pleasant. She was about forty-five years of age when she was killed. The train could have been stopped within six or eight feet."

J. A. Baker testified: "When the train passed my house on the day of the accident, I was sitting on the front porch facing in the direction in which the train was going. After the train had passed my house, something like 150 or 175 feet, I saw Mrs. Carroll. I was looking out over the cars when I saw her. I judge she was something like six feet from the cars. The next I saw of her was a glimpse of her under the car wheels. The engineer was looking down the track towards Mrs. Carroll at the time I saw her. I do not know whether the train struck her before she got on the trestle or not."

W. A. McClellan, testified: "I was the engineer on the log train that struck Mrs. Carroll. I did not see Mrs. Carroll on the track that day. I could not have seen her because of the tank of coal. The engine was running backwards pushing the tender and three flat cars in front of it. I had no knowledge of her presence on the track until the train had passed over her in the culvert there. The engine was making considerable noise as it propelled the train."

The brakeman was not present and did not testify at the trial, but the defendant introduced testimony tending to show that he had left the employ of the company before the suit was commenced, and that after a diligent search they were not able to ascertain his whereabouts.

The culvert or trestle near or on which the defendant was injured was about ten feet long and averaged two and one-half feet in height. There was one place on it between the ties about eighteen inches wide, and it was in this hole that Mrs. Carroll was found after the accident. The witnesses say she was found on her knees with her head sticking out above the trestle. There was a bruised place on each knee, and one on her hip. The skin was not broken on the hip, and did not bleed any. The skin was broken on her right eye, and bled a great deal. Two of her teeth were nearly knocked out. There were no bruises of any character on the front or back parts of her body, and her left arm was cut in two twice, and three fingers mashed on her right hand. She remained conscious for most of the time after she was injured until her death. Other facts will be referred to in the opinion.

The jury returned a verdict as follows: "We, the jury, find for the plaintiff as administrator in the sum of $1,000, and for the plaintiff individually in the sum of $2,000." From the judgment rendered the defendant has duly prosecuted an appeal.

*D. B. Sain* and *W. C. Rodgers*, for appellant.

1. The court should have directed a verdict for the defendant, because it entirely fails to show that any of the employees in charge of the train discovered the deceased on the track in time to have avoided the injury. 94 Ark. 529; 86 Ark. 306; 54 Ark. 431; 56 Ark. 457; 61 Ark. 549.

2. Deceased was a trespasser upon the track and grossly negligent. There was nothing to indicate that she was not a woman of mature years, in possession of all her faculties and at liberty to leave the track at any time she so willed. The train was running very slowly, and there was no reason apparent why the ordinary presumption that she would leave the track in time to save herself should not prevail. 113 Ind. 234; 47 Ark. 497, 502; 108 N. C. 616; 105 N. C. 140; 113 N. C. 558; 112 Ind. 59; 113 Ind. 196; 55 Kan. 536; 42 Neb. 905.

3. Deceased, in undertaking to use the railroad track as a footway, is presumed to have done so with full knowledge of its dangers and to have assumed the risk. 45 Kan. 503; 97 Ark. 438; 52 La. Ann. 1894; 114 La. Ann. 825.

4. The court erred in excluding testimony detailing the statement of the deceased made shortly after she was injured. It was competent as showing knowledge on her part of the proximity of the train, and as being a declaration against interest. 8 Ark. 510, 571; 9 Ark. 389; 31 Ark. 252; 37 Ark. 580; 58 Ark. 277; 59 Ark. 503; 60 Ark. 26; 74 Ark. 104; 78 Ark. 381; 54 Ark. 336; 77 Ark. 258; *Id.* 567; *Id.* 599; *Id.* 109; 79 Ark. 225; 84 Ark. 373; 87 Ark. 471; 90 Ark. 104. Her declaration would have been competent evidence against her, had she lived to bring suit. It was equally competent against her administrator suing in behalf of her estate.

*G. C. Hardin, W. P. Feazel* and *Mehaffy, Reid & Mehaffy,* for appellee.

1. The evidence shows that deceased was unconscious of the near approach of the train and of her peril, and that the train operative saw her in time to have given warning and stopped the train without injuring her. 91 Ark. 18; 89 Ark. 499; 2 Thompson on Negligence, § 1741; 74 Ark. 407.

2. The statement attributed to the deceased was not admissible. It was not competent or relevant because it throws no light upon the question at issue, *i. e.*, whether or not deceased's peril was discovered in time to have avoided the injury by the exercise of ordinary care, and whether or not such care was exercised.

3. There is no error in the instruction on the measure of damages. The amount of damages for pain and suffering must necessarily be left largely to the sound judgment and discretion of the jury. 89 Ark. 541; 48 Ark. 407.

4. Instruction 5 is proper. Kirby's Digest, § § 6288, 6290; 26 Am. Rep. 396.

HART, J., (after stating the facts). It is conceded that Mrs. Carroll was a trespasser, and it is the settled rule in this State that the only duty a railroad company owes a trespasser walking on its track is not to wilfully or negligently injure him after discovering his peril. *St. Louis, I. M. & S. Ry. Co.* v. *Evans,* 74 Ark. 407; *St. Louis S. W. Ry. Co.* v. *Jackson,* 91 Ark. 18; *Adams* v. *St. Louis, I. M. & S. Ry. Co.,* 83 Ark. 300; *Chicago, R. I. & P. Ry. Co.* v. *Bunch,* 82 Ark. 522.

In the application of this rule it is earnestly insisted by

learned counsel for the defendant that the verdict of the jury
was not warranted by the evidence. It must be conceded that
the case is a very close one, but we are unable to agree with
the contention of counsel for the defendant. Under the prin-
ciples of law announced in the cases cited above when the de-
fendant was charged with the knowledge of the presence of
Mrs. Carroll on its track, it immediately owed her the duty of
exercising ordinary care and diligence to prevent injury to her.
The boy, James Shope, testified that the brakeman on the flat
car in front of the engine looked at Mrs. Carroll and then
looked away to the side of the track. He says there were
no obstructions and nothing to prevent the brakeman from
seeing her when he looked at her. Another witness testified
that he saw the brakeman walking towards the front of the
flat car and looking towards Mrs. Carroll. The boy Shope
says that he thinks that Mrs. Carroll walked on the track for
a distance of twenty-five yards before she was struck. The
railroad company had the distance measured from the trestle
to a point on the track opposite Mrs. Rawlins' house, and the
distance is 112 feet. They also had the distance measured
from the trestle to the top of the hill where the train could
first be seen, and this was 547 feet. All the witnesses say there
was nothing to obstruct the view of the brakeman. From
this testimony the jury was warranted in finding that the
brakeman did see Mrs. Carroll walking down the track a short
distance ahead of the train with her back toward it. From
this time on the defendant owed Mrs. Carroll the duty of ex-
ercising ordinary care and diligence to prevent injury to her.
It is the theory of the defendant company that Mrs. Carroll
knew that the train was approaching her, and believed that
she could cross the trestle and step over to the side of the
track before the train reached her, and that she slipped and
fell in the trestle while crossing it. The testimony shows that
the train was making a good deal of noise as it approached,
and that all of the other persons heard it coming, and that
Mrs. Carroll was an able-bodied woman and in possession of
all her faculties. From this testimony, under the instructions
given by the court, the jury might have found for the defendant.
But the testimony also shows that Mrs. Carroll never looked
back from the time she stepped on the railroad track until

just before the train struck her. The boy, Shope, says that she was struck just before she reached the trestle, and was dragged by the train across the trestle into the hole where she was found. The trestle was about ten feet long and averaged about two and a half feet in height. The hole in which she was found was about two feet from the end of the trestle farthest from her, when she was struck. Hence, if the testimony of the boy Shope is true, she was struck by the train just before she reached the trestle, and was dragged nearly across it, a distance of about eight feet. The evidence shows that the train was a rolling down grade about $2\frac{1}{2}$ per cent. and that the steam was shut off. The engineer says that the speed of the train was about four miles per hour. Under these circumstances, the jury were warranted in believing that Mrs. Carroll was walking along the track, and, through inattention, absent-mindedness, or some other mental abstraction, was unaware of the near approacah of the train, and that, had the servants of the defendant blown the whistle when they saw that she did not look back, they might have attracted her attention, and she could have stepped to one side and avoided injury to herself. Again, the testimony shows that the train could have been stopped in the space of six or eight feet; that it could have been stopped either by the engineer or by the brakeman turning off the angle-cock in the front of the engine. Had the brakeman kept a lookout after he discovered her presence on the track, he would have seen that she did not get off when the train was getting nearer to her. He could then have warned her of her danger, or, failing in that, could have stopped the train in time to have avoided injuring her. At least, these are the deductions that the jury were warranted in drawing from all the facts and circumstances adduced in the evidence. The boy, Shope, said that she did not look around until just before she was struck by the train. Another witness said that he saw her standing six or eight feet in front of the train facing it the moment before she was struck. The jury might have inferred from this testimony that she was wholly unaware of the approach of the train until just before it struck her, and that when she heard it she turned around in a startled manner facing it. As we have already seen, the jury was warranted in finding that the brakeman saw Mrs. Carroll a short distance in front of the

train walking along the track with her back to it. From the evidence they were also warranted in believing that, had he looked again, he would have seen that she was unaware of the proximity of the train and the impending danger to her.

The testimony of the boy Shope is criticised because he says that the distance from the top of the hill where the train first came in sight to the scene of the accident was about a quarter of a mile when in fact it was only 547 feet, as shown by actual measurement. This was a mere inaccuracy of the judgment of the boy, and did not tend strongly to show that his testimony as to the thing he saw was not true. In any event his credibility was a question for the jury, and they had the right to believe such parts of his testimony as they believed to be true and reject that which appeared to be untrue.

The jury had a right to weigh the testimony and draw all reasonable deductions from it warranted by their common knowledge and experience with human affairs, and, when all the facts and circumstances adduced in evidence are considered together, we think the jury were warranted in finding that the servants of the defendant, after discovering the peril of Mrs. Carroll, did not use ordinary care and diligence to prevent injury to her.

The following questions and answers were asked a witness in the absence of the jury, and were excluded by the court from the jury:

"Q. Detail all that Mrs. Carroll told you about how this accident happened? A. I asked her how it happened, and she says: 'I was over to my daughter's and started home, and she told me to wait until that train passed, and I told her I thought I could get home before the train got there, and started, and the accident happened.'".

It is insisted by counsel for the defendant that this was error, but this court has decided adversely to this contention in the case of *Murphy* v. *St. Louis, I. M. & S. Ry. Co.*, 92 Ark. p. 159, where it held: "In a suit by an administrator of a deceased person to recover damages on account of his killing for the benefit of his mother or his next of kin, it was error to permit the defendant to offer in evidence a written statement made by deceased during his lifetime to the effect that his

mother was dead, as there was no privity between the next of kin and the deceased."

Hence it will be seen that the excluded testimony was not competent in the individual case of the husband against the defendant. The testimony not being competent in the case of the husband against the defendant, the defendant should have asked that the testimony be limited to the case in which it was admissible, and, not having done so, he is not now in an attitude to complain. *Murphy* v. *St. Louis. I. M. & S. Ry. Co..* 92 Ark. 159; *St. Louis, I. M. & S. Ry. Co.* v. *Raines,* 90 Ark. 482.

The court gave the following instruction: "If you find for the plaintiff as administrator, you will assess the damages at whatever sum you may find from the testimony to be a fair and reasonable compensation for the pain and suffering, if any, that was endured by plaintiff's intestate on account of the injury complained of. And in this you are to be guided by your sound judgment and discretion as jurors." It is insisted that the court erred in giving this instruction because by it the jury were directed to be guided by their judgment and discretion, instead of the testimony, in assessing the damages. We do not think the instruction is susceptible of this construction. The jury were plainly told that they were to assess the damages at whatever sum they found from the testimony to be a fair and reasonable compensation, and the court meant to tell them that they were to be governed by their judgment in determining from the testimony what the amount of damages ought to be. If counsel for the defendant thought the instruction open to the objection they now make, they should then by a specific request have asked the court to change the language, and, not having done so, they can not now complain.

It is next insisted that the court erred in giving instruction No. 5 as follows: "If you find for the plaintiff in his own individual right, you will in a separate finding assess his damages in whatever sum you may believe from the evidence he has been damaged by reason of the loss of the service and companionship he would have received from her, but for the injury complained of in his action." In support of their contention they rely on the case of *Helena Gas Co.* v. *Rogers,* 98 Ark. 413. That case is not authority for their contention. There the court held that the wife could not recover for her own

mental distress on account of her husband's pain and suffering. The husband is entitled to the society and companionship of his wife; and where he is deprived of her services and society or companionship, he has suffered a legal injury, and is entitled to compensation therefor. This is so by the express terms of our statute. Section 6288, Kirby's Digest.

Counsel for defendant complain that the court erred in not giving certain instructions asked by it on the subject of discovered peril. The court had already in its instructions given at the request of the defendant fully and completely covered this phase of the case, and it was not necessary to repeat the instructions.

The judgment will be affirmed.