CRAIGHEAD et al. v. MISSOURI PAC. TRANSP. CO.

No. 14475.

United States Court of Appeals
Eighth Circuit.

April 2, 1952.

[redacted]

[redacted]

[redacted]

Tom W. Campbell, Little Rock, Ark. (Kenneth C. Coffelt, Little Rock, Ark., on the brief), for appellants.

John B. Thurman, Little Rock, Ark. (Barber, Henry & Thurman, Little Rock, Ark., on the brief), for appellee.

Before GARDNER, Chief Judge, and RIDDICK and COLLET, Circuit Judges.

COLLET, Circuit Judge.

The only question presented on this appeal is whether there was sufficient evidence of negligence to support the jury's verdict for damages resulting from a highway accident. After verdict the trial court carefully considered the evidence and concluded that there was no substantial evidence upon which the jury's verdict could be based and sustained a motion for a judgment in favor of defendant notwithstanding the verdict. The trial court further ordered that in the event the judgment notwithstanding the verdict was reversed, that defendant's alternative motion for a new trial was granted because of error in an instruction given the jury.

[redacted] At about 1 o'clock p. m. on August 19, 1950, a clear, hot, dry day, Mrs. Cash and Mrs. Craighead were driving south on an eighteen- to twenty-foot wide concrete highway a few miles north of Little Rock, Arkansas. Mrs. Cash was driving the car. Mrs. Craighead, on account of whose death this action was brought, was a passenger. The car was traveling 35 or 40 miles an hour. Just after it came around a slight curve, the two right wheels of the car ran off of the right or west side of the pavement. It continued on south with the two right wheels on the right shoulder of the highway for a distance estimated by different witnesses at from 20 to 50 feet. The car (a 1950 Tudor Ford Sedan) then cut diagonally across the pavement to the east side of the highway and ran off of the pavement onto the shoulder on the east side. It then ran south on the east side shoulder 32 feet, where it struck an electric power line pole, breaking the pole. It then continued south 27 feet on the east shoulder where it and defendant's 29-passenger bus collided. Mrs. Cash and Mrs. Craighead were the only occupants of the car. Both were killed. The distance from the point where the car first went off of the pavement on the right or west side of the highway, on a straight line, to the point of collision was 282 feet. The defendant's bus was traveling north from Little Rock on its right (east) side of the highway when the driver saw the car first run off of the west side of the pavement. He realized that the action of the car was unusual and states that he watched it carefully from that time. His testimony of the distance he was then from the car and what he did thereafter, in a number of respects corroborated by several of the 25 passengers on the bus, would

exonerate him from any negligence in the operation of the bus. But since after a verdict we must consider the evidence in the light most favorable to the verdict, we relate the facts in that light. Those facts are that when the car first went off of the pavement on the west side, the bus was from eight hundred to a thousand feet south of it, traveling at a speed of about 55 miles per hour. That it continued north with speed unabated until it was 45 feet south of the point of collision. At that point the driver applied the brakes and immediately swerved the bus to the east with the right wheels thereof off of the pavement and onto the east shoulder. There were skid marks on the shoulder showing the application of the brakes at a distance of 45 feet south of the point of collision. The bus could have been stopped in a distance of 75 to 100 feet, traveling at a speed of 45 miles per hour [1], in 85 to 110 feet at 50 miles per hour, and in 95 to 125 feet at 55 miles per hour [2], from the time the brakes were applied. Including the "reaction" time, or the time intervening after the driver saw the situation which showed the need to stop and the time before the brakes were actually applied, the bus could have been stopped in 200 feet traveling at 55 miles per hour. The bus was approximately eight feet wide. The right front fender of the car and the right front end of the bus collided at a point five feet nine inches east of the east side of the pavement. After the collision the bus traveled on north, pushing the car ahead of it, for a distance of 96 feet, where it came to a stop in the middle of the pavement with the right front wheel of the bus and the right front wheel of the car on the center line.

One of the assignments of negligence was that after the driver of the bus observed the unusual action of the car when it first went off of the pavement he should have brought the bus under control and stopped it before the collision.

█ The evidence that the bus was traveling at a speed of 55 to 60 miles per hour, that it was from 800 to 1000 feet south of

the car when the latter first ran off of the west side of the pavement, the evidence that the driver of the bus did not apply the brakes until a few feet south of the point of collision, and other facts damaging to defendant are found in the testimony of one of plaintiffs' witnesses, Befort, who, was one of the passengers on the bus and has an action pending against the defendant for personal injuries received in the accident. Defendant argues that her testimony was inconsistent with the physical and mathematical facts and should not constitute substantial evidence to support the verdict. We have analyzed the facts and do not find that to be the case. On the contrary, some of the mathematical facts corroborate her in important respects.

On the question of the speed of the bus it is to be observed that the skid marks of the bus on the east shoulder began 45 feet south of the point of collision. The testimony is not contradicted that the bus could have been stopped within 125 feet after the application of the brakes, yet it traveled 141 feet by actual measurement from the point the brakes were applied to where it stopped, pushing the car ahead of it for the last 96 feet. There was testimony of a disinterested witness living close by that a depression from six to ten feet long, four or five feet wide, and two or three inches deep was dug in the concrete or asphalt pavement where it appeared that something, presumably the car, had been shoved along the pavement at the point where the bus and the car came to a stop. These facts would justify the conclusion that if, as the driver of the bus testified, and the skid marks indicated, the brakes were applied 45 feet from the point of impact and the bus could have been stopped in 125 feet at 55 miles per hour, the bus was traveling at a speed in excess of 55 miles per hour.

On the question of the distance between the bus and the car at the time the car first went off of the pavement on the west side, fixed by plaintiffs' witness at from 800 to 1000 feet, and by the bus driver at from 125 to 150 feet,—if the bus driver's estimate

---

1. The driver of the bus testified the bus was traveling 45 to 50 miles per hour at that time.

2. There was evidence for plaintiffs that the bus was traveling 55 or 60 miles per hour, or possibly 70.

that the speed of the bus was 50 miles per hour [3] at the time he swerved it onto the east shoulder was accepted, and the defendant's evidence that the speed of the car at the time it first ran off of the west side of the pavement was 40 miles per hour was accepted by the jury [4], it took the car 4.67 seconds to travel 282 feet and reach the point of collision, assuming (in derogation of plaintiffs' case) that the car maintained that speed while it ran down the west side of the highway with two wheels off the pavement, while it swerved diagonally across the pavement leaving noticeable skid marks in its path, while it ran south on the east shoulder for 32 feet, struck an electric power line transmission pole, breaking it off, and then for another 27 feet on the east shoulder. In that 4.67 seconds, the bus traveling at 50 miles per hour (if it maintained that speed) [5] would have traveled 342 feet and would have been that distance south of the point of collision when the car first ran off the pavement, or that distance plus 282 feet—624 feet from the car at that time. That was more than three times the distance in which the evidence showed the bus could have been stopped, allowing for "reaction" time. But if the testimony of the plaintiffs' witness Befort, which is under attack, that the bus was traveling 60 miles per hour, should have been accepted by the jury (and which was not patently unreasonable or unbelievable, as we have heretofore pointed out, in view of the distance the actual measurements showed the bus traveled after the brakes were applied), the bus would have traveled 411 feet while the car was traveling 282 feet and they would have been 693 feet apart. Again, taking the witness Befort's testimony as to the speed of both vehicles—60 miles per hour for the bus and 35 miles per hour for the car—6.19 seconds elapsed while the car was traveling 282 feet from the point it first left the pavement until it collided with the bus. During that time, at 60 miles per hour, the bus would have traveled 544 feet and would have been 826 feet from the car when it first left the pavement. While the latter hypothesis assumes the correctness of the testimony of the witness under attack and probably should not therefore be used at one and the same time to determine the possibility or probability of its accuracy, yet it does demonstrate the consistency of her testimony as to speed with her estimate of distance. Her testimony that the brakes were not applied until the bus was only a short distance from the car is supported, at least to some extent, by the testimony of the driver that he swerved the bus onto the east shoulder and immediately applied the brakes, and the actual measurements showing that the point of application of the brakes was 45 feet from the point of collision. We do not find that testimony so inconsistent with uncontradicted testimony, the physical facts, and mathematical calculations based thereon to warrant the conclusion that it was entirely unworthy of substantial weight by the jury.

The Arkansas Supreme Court has stated the law of negligence in this respect in Bona v. S. R. Thomas Auto Company, 137 Ark. 217, 208 S.W. 306, 308, in the following language:

"The true test in all cases is whether or not the driver has used such care and caution as a careful and prudent person would have done under the same circumstances, and a driver of automobiles is not exempt from negligence by simply showing that at the time of the accident he was not running at a rate of speed greater than that allowed by law; for ordinary care, under the circumstances of the particular case, might require that he be operating his machine at even a lower rate of speed than the limit fixed by law. To enable him to avoid a collision with another person, ordinary care

3. He testified that at that time the speed of the bus was 45 to 50 miles per hour.

4. The only evidence offered by the defendant on the speed of the car which we can find in the record is the testimony of one witness that its speed was 40 or 45 miles per hour.

5. It is, of course, probable that neither the car or the bus maintained the rate of speed stated by the witnesses, but since the evidence was that the speed of the lighter car could be slowed more rapidly than the speed of the heavier bus, the hypothesis stated could have been fairly applied by the jury.

might require that he should have his machine under such control that he not only could slow up, but also stop."

It is correct, as appellee states, that "No one is required to guard against that which a reasonably prudent person, under the circumstances, would not anticipate as likely to happen." Fort Smith Gas Co. v. Cloud, 8 Cir., 75 F.2d 413, 416, 97 A.L.R. 833, and

"The true rule is that the driver must have his car under such reasonable control as would enable him to avoid accidents which might be foreseen by the exercise of ordinary care.

&ast; &ast; &ast; &ast; &ast; &ast;

"It is not to be supposed that a driver of an automobile is required to drive at a rate of speed at all times as would enable him to stop immediately at any given time." Coca-Cola Bottling Co. v. Doud, 189 Ark. 986, 76 S.W.2d 87, 90.

But it does not offend against the rule announced in Fort Smith Gas Co. v. Cloud and Coca-Cola Bottling Co. v. Doud to require that when the driver of a motor vehicle sees danger ahead, or it is reasonably apparent if he is keeping a proper lookout, or if he is warned of approaching imminent danger, then the duty is imposed upon him and the reasonable control of the car requires that he immediately bring his automobile under such control as to be able to check the speed or stop it absolutely, if necessary, in the threatened emergency. Livingston v. Baker, 202 Ark. 1097, 155 S.W. 2d 340.

▆▆▆ In this case the question is whether, when the driver observed the car go off the west side of the pavement, he should, in the exercise of reasonable care, have brought the bus under such control as to be able to check its speed or to stop it, if necessary. The fact that he saw the car go off the west side of the pavement is undisputed. He says so himself. The further fact that the action of the car in leaving the pavement was unusual put him on notice that an emergency threatened. He testified:

"When she hit the shoulder it was an unusual movement of the car because he knew it was not nature for a car to be run-

ning along and drop off the highway. He directed special attention to the movement of the car because he knew it should be watched until it was past."

He further testified:

"The moment he saw this car run off on the right shoulder and cut back across the road, the moment it ran off that right shoulder then it was he slapped on his brakes and pulled to the right off of the pavement."

And later in his testimony we find the following:

"When he saw her when she first ran off the road he knew that was an unusual movement and he strictly watched her car. He didn't know what was going to happen; that was the reason he slammed his brakes on immediately and then pulled to the right off of the pavement, 45 feet before the collision occurred."

Under this testimony alone the fact was adequately demonstrated that the driver of the bus was warned of approaching imminent danger by the action of the car. The question, therefore, is narrowed to that of whether, with knowledge of the situation existing and its warning to the driver of the bus of approaching imminent danger to the car, he should and could have, in the exercise of such care and caution as a careful and prudent person would have done under the same circumstances, stopped the bus in the distance the two vehicles were apart. As heretofore demonstrated, there was adequate opportunity and time for him to stop. As stated in Egan Chevrolet Co. v. Bruner, 8 Cir., 102 F.2d 373, 377, 122 A. L.R. 987:

"The question of negligence is usually one of fact for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence becomes one of law for the court."

Whether the driver of the bus exercised the degree of care required under the circumstances was in our judgment a question for the jury, under the decisions of the Supreme Court of Arkansas. Roark Transportation, Inc. v. Sneed, 188 Ark. 928, 68

S.W.2d 996; Van Bibber v. Strong, 203 Ark. 1090, 160 S.W.2d 861; Arkansas Power & Light Co. v. Kennedy, 189 Ark. 95, 70 S.W.2d 506; Graysonia-Nashville Lumber Co. v. Carroll, 102 Ark. 460, 144 S.W. 519. See also Cope v. Heath, 8 Cir., 108 F.2d 854. The cause must therefore be reversed. And in view of the order of the trial court sustaining defendant's motion for a new trial, the cause will be reversed and remanded for a new trial, pursuant to that order.

■ We are constrained to express our hearty approval of the action of the trial court in submitting the question of negligence to the jury, obtaining the jury's verdict, and then acting upon the defendant's contention that the evidence did not make a submissible case for the jury. Prior to the adoption of the present Rules of Civil Procedure for the District Courts, 28 U.S.C.A., in order that the authority to act upon a motion for a directed verdict should be clearly retained until after submission and verdict, it was necessary for the trial court to specifically reserve a ruling upon the motion for a directed verdict. But the present Rules of Civil Procedure expressly provide, Rule 50(b), that when such a motion is denied or not granted, the trial court is "deemed to have submitted the action to the jury subject to a later determination * *" of the sufficiency of the evidence. One of the obviously important reasons for this provision was to give to the trial court the clear authority to submit questions of negligence to the jury when there was doubt as to the sufficiency of evidentiary support therefor, receive the jury's verdict, and, in the event of a verdict for the plaintiff, then resolve the doubt, thereby leaving the case in a status which would permit a reviewing court to uphold the verdict or reverse it without the necessity for a new trial. In that manner repetitious trials with attendant expense and delays are avoided, one of the salutary purposes of the present civil procedure.

And we do not deem it inappropriate also to express our approval of the practice by District Judges of granting motions for new trial where in their judgment errors in the trial were clearly committed. Ordinarily such practice eliminates the expense and delay incident to an appeal.

For the reasons stated, the cause is reversed and remanded for new trial.