Rita E. SHAW, Plaintiff-Appellant,

v.

EDWARD HINES LUMBER CO., Defendant-Appellee.

No. 11997.

United States Court of Appeals Seventh Circuit.

Oct. 30, 1957.

David P. List, Chicago, Ill., John H. Rockwell, Chicago, Ill., Hastings, Snyder & Rockwell, Chicago, Ill., of counsel, for appellant.

Lloyd P. Douglas, Chicago, Ill., Herbert T. Price, Chicago, Ill., Price, Roddy & Schlager, Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff appeals from a judgment in defendant's favor in an action to recover damages for injuries sustained in an automobile accident, in which a tractor-trailer driven by an employee of defendant collided with plaintiff's car at a street intersection.

At the close of plaintiff's evidence, defendant's motion for a directed verdict was denied and, at the close of all the evidence, it was renewed. The court reserved decision thereon and submitted

the case to a jury, which returned a verdict in favor of plaintiff. On the same day, when defendant asked the court to set for hearing its motion for directed verdict, the court set the matter for argument on January 14, 1957. No judgment had been entered. Upon conclusion of argument on the motion, the trial judge, concluding that it should have been sustained, allowed it, set aside the verdict and entered judgment for defendant. In addition, defendant's motion for a new trial was ordered allowed in the event the decision on the motion for directed verdict should upon appeal be held to have been erroneous.

At the outset it is necessary to consider plaintiff's contention that the district court was without power to grant defendant's motion for directed verdict and to enter judgment thereon, in view of Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which is as follows:

> "(b) Reservation of Decision on Motion. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

It is plaintiff's position that defendant failed to conform to the procedure set forth in Rule 50(b) whereby a court may enter judgment upon a motion for directed verdict, in that it failed to present to the district court any proper additional post-verdict motion. Based on this assertion it is urged that the trial court lacked power to enter judgment contrary to the verdict, even though it had expressly reserved decision on defendant's motion for directed verdict. Implicit in plaintiff's argument is the premise that a specific motion for judgment notwithstanding the verdict is a prerequisite to the trial court's power to enter judgment contrary to the verdict.

Prior to adoption of Rule 50(b), it was thought that, in order that a court might enter judgment contrary to the verdict, it was necessary that the court expressly reserve its decision on a motion for directed verdict in order to obviate difficulties presented by the Seventh Amendment. See Baltimore & Carolina Line, Inc., v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636. However, as pointed out in Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 250, 61 S.Ct. 189, 193, 85 L.Ed. 147: "The rule was adopted for the purpose of speeding litigation and preventing unnecessary retrials. * * * Rule 50(b) merely renders unnecessary a request for reservation of the question of law or a formal reservation and, in addition, regulates the time and manner of moving for direction and of moving for judgment on the basis of the refusal to direct." See also Guerrero v. American-Hawaiian Steamship Co., 9 Cir., 222 F.2d 238; Brunet v. S. S. Kresge Co., 7 Cir., 115 F.2d 713. Furthermore, there is no doubt but that one of the cogent reasons for the rule was the desire to permit the trial court to resolve any doubt as to

the sufficiency of the evidence subsequent to the rendition of the verdict, thereby placing the case in such a posture that, in the event it should be concluded upon review that the court erred in directing a verdict, the original verdict may be reinstated without a new trial. See Craighead v. Missouri Pac. Transportation Co., 8 Cir., 195 F.2d 652, 657; Fratta v. Grace Line, Inc., 2 Cir., 139 F.2d 743, 744. It is clear that a court may expressly reserve decision on a motion for directed verdict. Karnowski v. Skelly Oil Co., 10 Cir., 174 F.2d 770; Western Union Telegraph Co. v. Dismang, 10 Cir., 106 F.2d 362. Indeed, various courts have recommended that trial courts reserve their decisions on such motions. See Fratta v. Grace Lines, Inc., supra, 139 F.2d at page 744. This recommendation is made, not only for the purpose of avoiding unnecessary delay, but, in addition, to provide a procedure which gives the trial judge adequate opportunity properly to scrutinize the record and to make informed, considered rulings. See Baltimore & Carolina Line, Inc. v. Redman, supra.

█ In considering the question whether it is always necessary to make a specific post-verdict motion for judgment notwithstanding the verdict, it is well to keep in mind the function of such a motion. Concededly, the questions raised by a motion for directed verdict and by a motion for judgment notwithstanding the verdict are the same. Montgomery Ward & Co. v. Duncan, supra. In Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849, the Supreme Court quite clearly pointed out the function of a motion for judgment notwithstanding a verdict, although in that case the Court was considering a question somewhat different from that with which we are now confronted. In the Cone case, after all the evidence had been submitted and defendant's motion for a directed verdict had been denied, the case was submitted to the jury. A verdict for plaintiff was returned and judgment entered thereon. Thereafter, defendant presented a motion for a new trial on the ground of newly discovered evidence, which was denied. However, defendant failed to move for judgment notwithstanding the verdict. On appeal, the judgment was reversed and remanded with directions to enter judgment for defendant. The precise question presented to the Supreme Court was whether the court of appeals could properly order judgment entered on the basis of defendant's motion for directed verdict, in the absence of a proper motion for judgment notwithstanding the verdict. This situation is unlike the one before us where the question is one of the power of the district court to enter judgment on the basis of a motion for a directed verdict, in the absence of any further post-verdict motion, when the court has expressly reserved its decision on the original motion. The Court, in Cone, held that the court of appeals lacked the power to enter such a judgment because the trial court had never had an opportunity to exercise its discretion, as provided for in Rule 50(b), to grant a new trial rather than a motion for judgment notwithstanding the verdict. There is little doubt but that the Supreme Court was concerned with the fact that the plaintiff had been deprived of any opportunity to ask for a new trial when it stated (330 U.S. 212, 215, 216, 67 S.Ct. 752, 754): "Rule 50(b) contains no language which absolutely requires a trial court to enter judgment notwithstanding the verdict even though that court is persuaded that it erred in failing to direct a verdict for the losing party. The rule provides that the trial court 'may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.' This 'either-or' language means what it seems to mean, namely, that there are circumstances which might lead the trial court to believe that a new trial rather than a final termination of the trial stage of the controversy would better serve the ends of justice. In short, the rule does not compel a trial judge to enter a judg-

ment notwithstanding the verdict instead of ordering a new trial; it permits him to exercise a discretion to chose between the two alternatives. See Berry v. United States, 312 U.S. [450] 452, 453, 61 S.Ct. 637, 85 L.Ed. 945. And he can exercise this discretion with a fresh personal knowledge of the issues involved, the kind of evidence given, and the impression made by witnesses. His appraisal of the bona fides of the claims asserted by the litigants is of great value in reaching a conclusion as to whether a new trial should be granted. Determination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart."

In Globe Liquor Co. v. San Roman, 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177, the Court reiterated the doctrine enunciated in Cone. In Globe Liquor, as in Cone, the explicit question presented to the Court was whether the appellate court had power to remand the case with a direction to enter judgment for defendant, where no post-verdict motion for judgment notwithstanding the verdict had been made. The only basis for distinction between Globe and Cone was that in Globe the trial court had allowed plaintiff's motion for directed verdict and denied the defendant's motion for similar relief, so that the verdict which was set aside on appeal had been directed by the district court rather than returned by the jury. Again, the Supreme Court felt that plaintiff had been prejudiced in that the trial court had never had an opportunity under Rule 50(b) to exercise its discretion to order a new trial rather than enter judgment for the defendant on the basis of its motion for directed verdict. The Court held that the district court should first have an opportunity to pass upon the question of whether a new trial or a judgment terminating the controversy should be ordered. This same attitude prevailed in Fountain v. Filson, 336 U.S. 681, 69 S.Ct.

754, 93 L.Ed. 971. And, in Johnson v. New York, New Haven & Hartford R. R. Co., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77, the Court again was confronted with the specific problem of the power of the appellate court to remand and enter judgment on the basis of defendant's motion for directed verdict when, at the close of all the evidence, the trial court expressly reserved its ruling until after the jury had returned a verdict for plaintiff, and thereafter *denied* defendant's motion. As we view Johnson, it merely stands for an extension of the doctrine set forth in Cone, Globe Liquor and Fountain. In Johnson, the court of appeals, concluding that the motion for directed verdict should have been sustained, reversed the judgment entered below and remanded the cause with instructions to enter judgment for defendant. Clearly, again the Supreme Court was confronted with a situation where plaintiff had been prejudiced by denial of an opportunity to urge before the trial court that a new trial should be awarded rather than a judgment notwithstanding the verdict. As the trial court had entered judgment for plaintiff and had specifically denied defendant's motion for directed verdict, plaintiff was not in a position to urge that the court should grant a new trial, when the verdict and judgment were in his favor. This lack of opportunity for the trial judge to exercise initially his informed judicial discretion was deemed seriously prejudicial to plaintiff.

The circumstances which confronted the Supreme Court in the Johnson case are clearly distinguishable from those with which we are concerned. In the present case, the lower court expressly reserved its ruling on the motion for directed verdict, and allowed the case to go to the jury, with the intention of ruling on the motion subsequent to return of the verdict. Upon its return in favor of plaintiff, before entry of judgment, defendant explicitly requested a hearing on the reserved motion for directed verdict and the court set a date for argument. At the conclusion of the

hearing, the verdict was set aside and held for naught. Obviously, at that time plaintiff was in a position to urge upon the trial court that a new trial should be granted, and the court, acting within its discretionary power, might have acceded to such a request. Plaintiff was prejudiced in no way. Consequently, there was no violation of the spirit of Rule 50(b). Obviously the limit imposed by Rule 59 as to the time within which motions for new trial must be filed had no application to plaintiff's situation because on its face the rule was inapplicable to the present case. Rule 59(b) merely states that "A motion for a new trial shall be served not later than 10 days after the *entry of the judgment."* (Emphasis supplied.) Here, at the time of the argument on defendant's motion for directed verdict no judgment had been entered. Consequently, plaintiff, when the court allowed the motion for a directed verdict and set the jury's verdict aside, might properly have presented a motion for a new trial prior to entry of judgment for defendant. Furthermore, the court, in effect, adequately protected plaintiff by granting defendant's motion for new trial in the event that its decision on defendant's motion should be determined to have been erroneous. This clearly was within the spirit of Rule 50(b). It is true that in Johnson some of the language of Mr. Justice Black was directed to the general power of the trial judge. However, the problem with which the Court was confronted and with which alone it was concerned was not that with which we are faced here, where the trial judge acted on the motion for directed verdict in the affirmative. As plaintiff was not precluded from seeking a new trial, she was not procedurally surprised or trapped.

■■ As pointed out in Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 253, 61 S.Ct. 189, 195, in reference to the construction of Rule 50(b): "the courts should so administer the rule as to accomplish all that is permissible under its terms." We conclude that, as plaintiff's procedural rights were not preju-

diced by the action of the trial court, that court was not precluded from entering judgment for defendant on the basis of its allowed motion for directed verdict, even though there was no specific motion for judgment notwithstanding the verdict. A contrary result would require a very narrow reading of the rule. As said in the dissenting opinion in Jackson v. Wilson Trucking Corp., 100 U.S. App.D.C. 106, 243 F.2d 212, 222: "The Rule simply points the way like a highway marker; in saying it may be done thus it does not preclude all other ways. It should be read as a *direction* to the parties, not a *limitation* on the court." For a similar construction of the rule wherein the procedure herein adopted was approved see Binder v. Commercial Travelers Mut. Acc. Ass'n, 2 Cir., 165 F. 2d 896; Kline v. Yokom, 7 Cir., 117 F.2d 370; Western Union Telegraph Co. v. Dismang, 10 Cir., 106 F.2d 362; Mullen v. Fitz Simons & Connell Dredge & Dock Co., D.C.N.D.Ill.E.D.1950, 11 F.R.D. 348.

■ Consequently, as we have concluded that the court below was empowered to set aside the verdict and enter judgment in accordance with defendant's motion for a directed verdict, we turn our attention to the propriety of this action under the facts of this case. It is well settled that it is necessary for both this court on review and the trial court in its ruling on a motion for directed verdict to view the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to plaintiff. Teets v. Chicago, South Shore & South Bend Railroad, 7 Cir., 238 F.2d 223, 224; Beattie v. Elgin, J. & E. Ry. Co., 7 Cir., 217 F.2d 863, 865; Koch v. Chicago & N. W. Ry. Co., 7 Cir., 208 F.2d 152, 155. However, as we pointed out in Brunner v. Minneapolis, St. Paul & Sault Ste. Marie R. Co., 7 Cir., 240 F.2d 608, 609: "this does not mean that we may ignore uncontradicted, unimpeached evidence supporting defendant's position."

The accident in evidence occurred at the intersection of Leavitt and Fulton Streets in Chicago, in the early part of

a sunny, clear afternoon on August 8, 1955. Defendant's tractor-trailer, loaded with 17,934 pounds of lumber, was being driven by its employee, Zelinski, and was proceeding west on Fulton, a through street. Plaintiff, driving north on Leavitt, encountered stop signs at the corner of Leavitt and Fulton. The actual point of impact was in what may be designated as the northeast quadrant of the intersection. As a result of the collision, plaintiff's automobile was knocked 45 feet in a northwesterly direction, and defendant's tractor-trailer continued northwesterly for about 35 feet beyond the point of impact. The only tire marks indicating braking were those made by the truck beginning at the point of impact and continuing for some 24 feet in a northwesterly direction.

There were no disinterested eye witnesses, and plaintiff, as a result of a condition referred to as retrograde amnesia, was unable to recall any of the events occurring at the time of the accident. The driver, Zelinski, testified that he was driving at a speed of from 20 to 25 miles per hour and that, when he arrived at the corner of Leavitt and Fulton, he saw a car coming at him from the left "too fast" to enable him to avoid it. However, plaintiff, in an attempt to impeach Zelinski on the issue of whether he ever "saw" plaintiff's automobile prior to the collision, introduced testimony of two investigating police officers, who testified that, at the hospital, one and one-half hours after the accident, Zelinski said that he did not see plaintiff's automobile prior to the collision.

■■ It is clear that, in order to recover, it was necessary for plaintiff to prove by a preponderance of the evidence not only that defendant was negligent in some respect so as proximately to cause the accident, but also, under Illinois law, the burden was upon her to show that she was free from contributory negligence. On the latter issue we think the trial judge was fully justified in concluding that plaintiff had failed utterly to sustain the burden of showing that she acted with reasonable care in her own behalf. We say this even though we assume arguendo that plaintiff halted at the stop sign, though the record is silent in this respect. Without question it is the duty of a person to yield the right of way at an intersection when a party such as defendant on the driver's right is so near the intersection that an attempted crossing would be hazardous. Ch. 95½ Ill.Rev.Stat. § 167. Furthermore, even though there was testimony of plaintiff's previous safe driving habits, the record clearly discloses that plaintiff either looked but failed to see defendant's oncoming truck or failed to look at all. As pointed out in Greenwald v. Baltimore & O. R. R., 332 Ill. 627, 632, 164 N.E. 142, 144. "The law will not tolerate the absurdity of allowing a person to testify that he looked but did not see the train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it."

As we are of the view that plaintiff failed to sustain her burden of proving freedom from contributory negligence, we conclude that the action of the trial court in entering judgment in accordance with defendant's motion for directed verdict was proper.

The judgment is affirmed.