HANLEY (ELLA), Respondent, vs. THE MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*November 6, 1935—February 4, 1936.*

For the appellant there were briefs by *Shaw, Muskat & Paulsen,* of Milwaukee, and oral argument by *Martin R. Paulsen.*

For the respondent there was a brief by *B. L. Berkwich* and *Gold & McCann* all of Milwaukee, and oral argument by *Mr. Berkwich* and *Mr. Ray T. McCann.*

The following opinion was filed December 3, 1935:

FOWLER, J. The defendant claims that its motion for judgment notwithstanding the verdict should have been granted because the jury's findings respecting the jerking of the streetcar in stopping are not supported by the evidence. Its contention is that there is no negligence unless the jerking of the car was unusual, and that statements of witnesses that it was unusual are not sufficient to support a finding to that effect, unless they are accompanied by evidence of physical facts showing that it was so. While there are cases holding, as stated in *Otto v. Milwaukee Northern R. Co.* 148 Wis. 54, 58, 134 N. W. 157, that the mere sudden jerking of an electric streetcar is not in itself sufficient proof of actionable negligence—"that affirmative proof is necessary of an unusual jerk, and that mere statements of the witness that the start was violent and sudden is not sufficient"—we are clearly of the opinion that this case is not within that rule. If the rule be as strict as above stated, there was not only testimony that the stop was unusual and sudden and violent, but there was evidence of the effect on the plaintiff and her companion and a passenger standing in the aisle ahead of the latter, which are physical facts, and there was testimony that any jerking is unnecessary under ordinary circumstances.

It is also contended that the testimony does not warrant a finding of negligence of the motorman. The proposition sought to be established here is that it sometimes is necessary to stop a car suddenly and violently in order to avoid collision with pedestrians or automobiles that dart suddenly ahead of the streetcar, or automobiles that in passing cut in ahead of it too soon; that it must be proved that the jerking was unnecessary; and that to prove that it was unnecessary it is necessary to prove that no conditions existed which required the sudden stopping to avoid collision, or that some defect in the mechanism or operation of the stopping apparatus or of the track existed. Extracts from decisions may be collated

which by themselves lend some support to this contention. But ordinary conditions, rather than extraordinary, should be assumed to exist in the absence of evidence as to conditions. At times motormen may be required to cause a car to jerk violently in stopping to avoid collision. But ordinarily pedestrians or automobiles do not so dart or turn in ahead of stopping streetcars as to require an emergency stop. We should not presume the extraordinary. Besides, there is evidence tending to show that no conditions existed requiring a sudden stop. The car stopped at the regular stopping place; the plaintiff was looking ahead of the car as she stood at the vestibule and saw no obstacles ahead in front of it and no automobiles or pedestrians; at previous stops of the car during the plaintiff's ride there had been no jerking. The great weight of authority seems to be that in case of violent stops the "duty rests on the defendant to show the cause" to exempt it from liability. *Ball v. Mobile L. & P. Co.* 146 Ala. 309, 39 So. 584; *Rystinki v. Central California T. Co.* 175 Cal. 336, 165 Pac. 952; *Goldstein v. United R. R. of San Francisco,* 54 Cal. App. 322, 202 Pac. 155; *Robertson v. Washington R. & E. Co.* 51 App. D. C. 311, 279 Fed. 180; *Southern Pac. Co. v. Hanlon* (C. C. A.), 9 Fed. (2d) 294; *Rust v. Springfield St. R. Co.* 217 Mass. 116, 104 N. E. 367; *Baughman v. Metropolitan St. Ry. Co.* (Mo. App.) 177 S. W. 800; *Carlson v. Wells* (Mo. App.), 276 S. W. 26; *Laible v. Wells,* 317 Mo. 141, 296 S. W. 428; *Lammert v. Wells* (Mo. App.), 282 S. W. 487; *Crenshaw v. St. Louis Pub. Serv. Co.* (Mo. App.) 52 S. W. (2d) 1035; *Consolidated Traction Co. v. Thalheimer,* 59 N. J. Law, 474, 37 Atl. 132; *Scott v. Bergen County Traction Co.* 63 N. J. Law, 407, 43 Atl. 1060; *Tompkins v. Interborough Rapid Transit Co.* 88 Misc. 20, 150 N. Y. Supp. 219; *Delaware, L. & W. R. Co. v. Byrne* (C. C. A.), 60 Fed. (2d) 268; *Richmond-Ashland R. Co. v. Jackson,* 157 Va. 628, 162 S. E. 18.

We are clearly of the opinion that the evidence required submission of the case to the jury, and that the motion for judgment notwithstanding the verdict was properly denied.

The defendant also claims that the judgment should be reversed and a new trial ordered because in the instructions to the jury the trial court defined negligence in the terms given in *Hamus v. Weber,* 199 Wis. 320, 226 N. W. 392, and that under the implication of *Osborne v. Montgomery,* 203 Wis. 223, 234 N. W. 372, reversal is necessary because the instruction did not also contain a definition of ordinary care. In the *Osborne Case* a definition of ordinary care was given in connection with the definition of negligence given in the *Hamus Case,* and the instruction as a whole was held to give a proper standard of care and to be sufficient. In the instant case, not ordinary care, but the highest degree of care consistent with practical operation of the streetcar, was due from the motorman, and the jury were so instructed. Thus, the proper standard of care, as in the *Osborne Case,* was given to guide the jury in determining the question of negligence.

The defendant also contends that the new trial must be ordered because of the excessiveness of the damages assessed. That the verdict is excessive is beyond controversy. The trial court so held, and that holding, which we approve, relieves us of need to state the evidence bearing upon the nature or extent of the plaintiff's injuries. But while we approve the holding that the verdict is excessive, we cannot approve the trial court's finding that $10,000 is the least sum that a jury properly actuated might have assessed upon the evidence. It seems manifest to us that a far less sum might properly have been awarded, and that such an award could not have been interfered with or criticized had the jury awarded it. This court has in a few instances fixed the lowest sum at which a jury properly actuated would have assessed the plaintiff's damages; but we consider that we

should not do so in the instant case, because we are satisfied that the damages were not only enhanced, but that the findings of the jury in other respects were quite likely influenced by the misconduct of plaintiff's counsel upon the trial comprised in the defendant's assignment of error next discussed.

During the course of the trial plaintiff's counsel was guilty of the following flagrant misconduct: He asked one of plaintiff's witnesses, whether late at night any of the tribe of detectives of the streetcar company happened out to take her statement. When an employee of the defendant employed by defendant to design safety equipment and make tests testified that it is impossible to operate a streetcar without jerking in stopping and starting, counsel asked: "Well, why don't you put that in some of your ads then?" Counsel asked a physician who was called by the defendant whether he had testified in the case of Simonson, who had had five amputations of his leg, and whether he was of opinion in that case that the amputations were not painful. Another physician called by the defendant's counsel was asked on cross-examination if he did "a lot of work for compensation insurance companies," and on receiving reply that he did, counsel followed this with the statement: "You are paid by the people who are interested in having the person painted with iodine and marked for duty and sent back?" Another physician called by the defendant on inquiry by plaintiff's counsel stated that he had never before appeared as a witness for the defendant, but had theretofore appeared against them. Counsel then remarked: "So you have now joined the ranks of the élite." These several remarks of counsel tended to insinuate that the witnesses were venal and not worthy of credence, and were manifestly made with the purpose of so insinuating.

During his argument to the jury, plaintiff's counsel referred to the defendant as a soulless and heartless corporation, and on defendant's counsel objecting to the remark added that defendant's counsel in his argument had referred to his client as the iniquitous, wealthy defendant, which state-

ment was manifestly made because of insinuations of plaintiff's counsel during the trial. More seriously flagrant than the misconduct above stated was the statement of plaintiff's counsel that: "She [the plaintiff] has been grievously slandered. She has been grievously libeled by this corporation, and I ask you whatever you do by your verdict in this case to seal once and forever this defendant corporation's lips of libel and its slime of slander." Complaint is made of some other remarks of counsel violative of the courtesy which opposing counsel owe to each other in the conduct of trials. The statements of counsel were passed over by the court's merely stating, on objection being made, "sustained," and on motion to instruct the jury to disregard the statement being made the court so instructed. But this mild treatment of the matter did not serve either to prevent recurrence of the misconduct or to overcome its effect upon the jury. That it prejudiced the jury and influenced their verdict seems manifest from their excessive award of damages. The passion and prejudice that influenced the award of damages quite likely influenced the verdict on the other issues. We consider that we cannot properly pass the matter with mere criticism, as this court has often passed like matters in the past. The court should not only say something about it, but should do something about it. All that has heretofore been said in condemnation and admonition has had little, if any, effect towards stopping such misconduct. In the recent case of *Georgeson v. Nielsen,* 218 Wis. 180, 260 N. W. 461, we granted a new trial because of statements of counsel much less flagrantly prejudicial and harmful than those above stated. We consider that like action should be taken in the instant case.

*By the Court.*—The judgment of the circuit court is reversed, and the record is remanded with directions to enter an order for a new trial.

A motion for a rehearing was denied, with $25 costs, on February 4, 1936.