Markowitz, Respondent, vs. The Milwaukee Electric Railway & Light Company, Appellant.

*January 11—April 7, 1937.*

348

For the appellant there were briefs by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Martin R. Paulsen.*

For the respondent there was a brief by *Rubin, Zabel & Ruppa,* attorneys, and *W. B. Rubin* and *W. C. Zabel* of counsel, all of Milwaukee, and oral argument by *Mr. Zabel* and *Mr. Rubin.*

The following opinion was filed February 9, 1937:

FAIRCHILD, J. The difficulties experienced by the trial court in this case are fully appreciated. The testimony of plaintiff of severe injuries; the likelihood of their having occurred through her own fault or misfortune; the fact that

no one supposes it is the purpose of the law to permit one to claim anything he finds necessary to sustain his case and to consider that claim evidence; the knowledge that such words as "awful" as in common use very often are exaggerations of speech, and when inquired into are found not to mean severe and unexpected; all this, coupled with the evidence offered by defendant of usual and proper management of its car, brings a problem well calculated to tax with worry the painstaking judge whose sole desire is to have liability rest where it should. The inability of some witnesses to reproduce, with exactness, occurrences in which they are actors, leaving out of consideration for the time any disposition to favor themselves in building a case, frequently presents situations where the only hope of securing a just determination is in a retrial of the issues. This practice must be resorted to in cases where justice appears not to have been done at the first trial, where the verdict, though not wholly contrary to evidence or on insufficient evidence in point of law, is manifestly wrong in point of discretion as contrary to the weight of the evidence. In those instances, the general rule is that the trial court's approval or disapproval is controlling. There are, however, exceptions not necessary to be mentioned here. The practical finality of the trial court's ruling emphasizes the corresponding responsibility resting upon the trial judge to do his part to see that frauds or mistakes do not find their way into solemn judgments of courts of justice. A new trial in the interest of justice is one of the practices to be followed when made necessary by the course of events in a trial witnessed and understood by the trial court. This method of requiring the discretionary approval by the judge of the jury verdict is provided to prevent a result which may be described in the words of Judge CARDOZO (now Justice CARDOZO) in a lecture on "The Nature of the Judicial Process," page 106, where he says:

"A jurisprudence that is not constantly brought into relation to objective or external standards, incurs the risk of

degenerating into what the Germans call 'Die Gefühlsjuris-prudenz,' a jurisprudence of mere sentiment or feeling."

An extreme finding by a jury, moved by sympathy or other extralegal cause, should not be treated as conclusive if the trial court sees that factors other than the evidence are responsible for the jury's finding.

The evidence bearing upon negligence of defendant was meager, particularly as to disturbance of the car after the alleged "jerk," and the comment upon the character of the evidence by the judge, to be quoted hereafter, seems warranted. The damages assessed by the jury were so excessive as to be some indication of perversity. The jury allowed $25,000; the amount of the judgment taken by plaintiff under the court's order was $14,681.25. There is no doubt that plaintiff sustained an injury as she alighted from defendant's streetcar or that she fell. The existence of a cause for a fall attributable to negligence of the defendant is the matter to be investigated. The car on which she was riding was in proper condition, and as it came to a stop no emergency arose calling for the use of unusual methods of controlling it. Before the car stopped, she walked from her seat to the exit without experiencing any difficulty. Handle bars or holds were provided at convenient places to assist one standing at an exit and about to leave the car. The purpose for which these are designed is to assist one in overcoming the effects of jerks and jars usual to the operation of a car under circumstances requiring passenger and operator to anticipate such jerks. Plaintiff evidently did not avail herself of these assisting supports. She testified that the exit door was open as she stood on the platform before the car stopped, and that the movement of the car which caused her to lose her balance was "an awful jerk; just jerked me right out." There is no claim that it broke any hold she had on the handle bars. Does the record disclose evidence which is fit and appropriate as a means of establishing the existence of a jerk, and that such

jerk was of an unusual and severe character? Does her statement, unexplained and uncontradicted, assuming that the jury was warranted in not believing the opposing statements of defendant's witnesses, appear to be sufficient to establish a jerk of the kind and degree necessary to subject the defendant to the charge of negligence in the operation of its car? If her statement with respect thereto is evidence which suffices to establish the fact unless rebutted or overcome by other evidence, the *prima facie* evidence rule at least has been satisfied. She testified that she "had both feet down flat on the platform," as she stood in front of and facing the exit doorway, for about a minute before she was thrown out. She said she was not trying to go out and that as soon as the streetcar gave the jerk she fell. It is within reason that a jerk sufficient to throw the plaintiff from the platform to the pavement, apparently without her stepping on the intervening step, would, if it occurred, be a jerk of unusual violence, and under the circumstances detailed in this instance might amount to negligence on the part of defendant who caused it. The plaintiff testified that this is what happened. The motorman and two reputable witnesses, hardly subject to the criticism leveled at them by plaintiff's counsel so far as anything in the record is concerned, testified to the contrary. Although unsupported by other witnesses as to the existence of a jerk, still the plaintiff has furnished a sufficient *quantum* of proof to be entitled to have her case go to the jury.

The motorman says that his car came to a gradual stop, and from the condition of the street and traffic, it appears that there was no occasion for stopping the car in any other way. It would seem to follow from the evidence of the respective parties that the claim of the plaintiff, if believed by the jury, would result in a finding of an extraordinary jerk. The trial court at the close of the testimony, in ruling upon a motion for a directed verdict, said:

"I have my doubts about it, but I think I will submit the case to the jury, and I will take the brief and give this

further consideration when I have further time. The evidence is all there, and I will get considerable benefit out of the argument as you argue to the jury. I add to that that I may direct a verdict during the arguments or after the arguments; I cannot say yet. The case is a good deal thinner than the *Hanley Case*."

Some time later, on ruling on motions after verdict, the learned trial judge said:

"Cases from other jurisdictions relied upon by defendant involving sudden and unusual jerks of streetcars while still in motion do not rule this case, because here the car had come to a complete stop and the exit door had been opened by the motorman to allow the plaintiff passenger to alight before the jerk found by the jury had occurred. Both the plaintiff and the motorman so testified. The case of *Hanley v. Milwaukee E. R. & L. Co.* 220 Wis. 281, 263 N. W. 638, 639, is considered a more pertinent authority."

Under our system of administering justice, the influence of a trial court's conclusion is most often controlling in determining whether the truth has been developed in the judicial investigation conducted before him and an accurate expression of that truth has been given in the jury's answer. If he is of the opinion that justice has not been done, it becomes his duty to grant a new trial or take such other step as the law provides for correction. It has been held that after a second trial and a verdict concurring with that first rendered, the submission of the matter to a third jury would again be within the discretion of the trial court, although, in that event, resubmission should be ordered with great reluctance. *Johnson v. Wilson*, 1 Pin. 65; *Gross Coal Co. v. Milwaukee*, 170 Wis. 467, 175 N. W. 793; see *Paulsen v. Gundersen*, 218 Wis. 578 at p. 583, 260 N. W. 448. The rulings of the trial court in those particulars, as we said, are entitled to considerable weight in determining questions submitted to this court upon appeal. Here the grave doubt expressed by the trial court as to the existence of any cause of action, and the final approval of the verdict upon the assumption, contrary to

all the evidence, that the jerk was due to starting the car while plaintiff was alighting, leaves the case with but very little basis for saying that the omission of a ruling that a new trial should be granted indicated approval of the finding. There is no evidence that the car started from a position at rest. Had it done so, a slighter jerk might be unusual and meet the requirements of the rule of the unusual jerk or negligent act spoken of in the cases referred to in *Hanley v. Milwaukee E. R. & L. Co.* 220 Wis. 281, 263 N. W. 638. The statements in the record rather strongly indicate the court's opinion that the testimony is of that degree of weakness to warrant a resubmission of the issues including that of an unusual jerk while the car was coming to a stop; and negligent operation of the car by defendant. We are of that opinion and find that a new trial is, under the circumstances disclosed by the record, necessary in the interest of justice.

*By the Court.*—Judgment reversed, cause remanded with directions to grant a new trial, costs of the first trial to abide the final outcome.

MARTIN, J., dissents.

A motion for a rehearing was denied, with $25 costs, on April 7, 1937.