WASIKOWSKI, Appellant, vs. CHICAGO & NORTH WESTERN RAILWAY COMPANY, Respondent.

*September 13—October 9, 1951.*

For the appellant there was a brief by *Kersten & McKinnon* of Milwaukee, and oral argument by *Arlo McKinnon.*

For the respondent there was a brief by *E. H. Borgelt, Richard S. Gibbs,* and *James R. Walker,* all of Milwaukee, and oral argument by *Mr. Gibbs.*

Brown, J. All issues on the appeal are subsidiary to the action of the learned trial court in determining, notwithstanding the verdict, that plaintiff Paul Wasikowski was guilty of causal negligence in equal degree with the defendant railroad. Ordinarily the existence of negligence and the comparison of the negligence of adverse parties are questions for

the jury. *Cameron v. Union Automobile Ins. Co.* (1933), 210 Wis. 659, 246 N. W. 420, 247 N. W. 453. When it appears as a matter of law that the negligence of the plaintiff is as great or greater than that of the defendant it is the duty of the court to so hold. *Instances of this kind are rare. Peters v. Chicago, M., St. P. & P. R. Co.* (1939), 230 Wis. 299, 301, 283 N. W. 803. The learned trial court concluded that such a rare instance is presented.

Much of the evidence was in conflict but the jury was warranted in believing the following version of the accident: About one o'clock in the morning of February 25, 1945, Paul Wasikowski and his wife left the home of their daughter to drive to their own home. To get there they had to cross the defendant's railroad tracks near the south limits of the city of Milwaukee. Wasikowski had been familiar with this crossing for thirty years and crossed at this place twice daily each working day. He knew that a flagman was continually on duty there who always came out of his shanty and stood in the center of the street when a train was about to pass over the crossing. Wasikowski also knew that just north of the crossing there was a sidetrack on which he had frequently seen engines or trains of cars standing while they waited for other trains to go past on the main line. On the night of the accident, Wasikowski, driving west, approached the intersection very slowly. There was mist or fog and he could not see far. He stopped his automobile about three feet from the nearest rail and looked in both directions. "About a block" to the north he saw an engine headlight at the place where he was accustomed to see a train waiting on the sidetrack. His car window on that side was closed and his motor was running and was noisy. He heard no whistle, bell, or other noise of a moving train. He then looked straight ahead and the watchman who had always been in the street if a train was to pass was not there. Wasikowski therefore put his car in motion but had not cleared the tracks when the engine he had seen and which actually was travel-

ing about twenty-five miles per hour struck it. Just before the impact he heard the whistle blow but it was then too late for him to avoid the collision. This train ran once a week to take sailors on leave from the naval station at Great Lakes back to their base.

The rule has been well stated that a person on a highway who intends to cross a railroad track may not rely on the nonoperation of a safety device or the absence of the usual flagman as an absolute assurance of safety and proceed without regard to his own safety. He must still exercise ordinary care for his own protection, but the presence or absence of warning guards or signals are circumstances to be considered in determining whether his conduct constituted the use of such care as is ordinarily exercised by the great mass of mankind under similar circumstances. "While a man may not rely upon reason, and fail to exercise his senses of sight and hearing in the presence of a known danger, yet, in determining whether or not he is guilty of a want of ordinary care, all the circumstances must be considered." *Gundlach v. Chicago & N. W. R. Co.* (1920), 172 Wis. 438, 443, 179 N. W. 577, 179 N. W. 985. "It is a matter of common knowledge and experience that travelers approaching a railway crossing at a time when gates or flagmen are ordinarily or usually maintained, take into consideration that fact in determining their course of conduct, and it is for the jury to determine whether or not, in a particular case, a traveler has given that circumstance such weight and consideration as the great mass of mankind ordinarily do under such circumstances, except in cases where it clearly appears that the traveler has approached the crossing in a careless and heedless manner without the proper regard for his own safety, . . . [It does not] necessarily follow that because there is ordinarily a flagman or gate maintained at a crossing where an injury occurs that in all cases a jury issue is raised. Each case must depend upon its own facts." (Id. p. 444.)

The instant case is not the ordinary one where the automobilist relied on the signal and did not look up and down the track, nor where he claims to have looked but did not see that which was in plain sight. Here the evidence is undisputed that he approached the track very slowly and came to a full stop before starting to cross. So far he was clearly exercising at least ordinary care. Then, he testified, he looked and actually saw this train, but went forward nevertheless. Whether this was negligent depends on all the circumstances and we think it cannot be decided as a matter of law that, given the circumstances in evidence, a person using such care as the great mass of mankind use in the same or similar circumstances could not have been mistaken, as the plaintiff claims to have been, in thinking that the train was not moving and have conducted himself accordingly. The jury could rightfully consider testimony that the window of the automobile was closed on the side toward the train and its motor was old and noisy, drowning out the sound of the approaching train, that visibility was poor so that only the engine headlight was seen and it was in a position where the plaintiff had frequently observed trains to stand when they did not intend to come across the highway, and the flagman who took his station in the street when a train was about to cross now did not do so. Wasikowski's mistake in his interpretation of that which he saw does not of itself necessarily convict him of negligence. We quote again from the *Gundlach* opinion (p. 443):

"This is not the case of a traveler approaching a railway crossing without exercising any care or in a heedless and careless manner. The evidence establishes the fact that he was in the exercise of some degree of care, and we are of the opinion that it is a question for the jury to determine whether or not, in the face of all the circumstances, . . . the conduct of the plaintiff in approaching the crossing constituted the use of such care as is ordinarily exercised by the great mass of mankind under like circumstances."

The jury was properly instructed in respect to ordinary care and the comparison of negligence. The comparison is peculiarly a matter for the jury. We consider that the learned trial court was right when it denied defendant's motion for a directed verdict and sent the case to the jury but was in error when it did not accept the jury's answers.

*By the Court.*—Judgment reversed and cause remanded with directions to reinstate the verdict as returned by the jury and proceed to judgment thereon as provided by law.