240 F.2d 608
 Dorothy BRUNNER, Administratrix of the Estate of Leonard J. Brunner, deceased, and Dorothy Brunner, Plaintiff-Appellant,
v.
MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILROAD COMPANY, a Minnesota Corporation, Defendant-Appellee.
 No. 11862.
 United States Court of Appeals Seventh Circuit.
 February 1, 1957.
 
 Everson, Ryan, Whitney & O'Melia and John C. Whitney, Green Bay, Wis., Patrick A. Dewane, Manitowoc, Wis., for appellant.
 Reginald W. Nelson, Milwaukee, Wis., for appellee.
 Before MAJOR, FINNEGAN and LINDLEY, Circuit Judges.
 LINDLEY, Circuit Judge.
 
 
 1
 This is an appeal from a judgment in an action to recover for alleged wrongful death resulting from an accident at a country railroad crossing where a highway snow plow driven by the deceased and a snow plow train of defendant collided.
 
 
 2
 Under well established rules, plaintiff is entitled to have the credible evidence considered in the light most favorable to her. However, this does not mean that we may ignore uncontradicted, unimpeached evidence supporting defendant's position.
 
 
 3
 The salient facts out of which this claim arose follow. The accident took place at approximately 3:05 p. m. on December 8, 1950, at a crossing of defendant's tracks and U. S. Highway 151 about three miles east of Valders, Wisconsin. At this point the railroad runs generally notheasterly and southwesterly. Highway 151 runs east and west and crosses the tracks at an angle of approximately 36 degrees. Approximately 1,195 feet southwest of the intersection, the railroad passes under an overhead bridge, from which, to a point about 500 feet southwest of the crossing, it runs through a cut. However, the tracks are practically level with the ground for some distance southwest of the bridge, and a clear view of the crossing was unimpaired by physical obstructions from a point at least 1,200 feet southwest of the intersection. Moreover, the view of one approaching the crossing on the highway was practically unobstructed to the southwest. From the crossing to a point 50 feet west along the highway there was a clear view for 1,200 feet down the track; from there to a point 75 feet from the crossing, there was an unobstructed view for at least 927 feet. Even from 500 feet away from the intersection, one could see more than 600 feet down the track.
 
 
 4
 Snow had fallen during the afternoon and night before the day of the accident, leaving several inches on the ground and, throughout the day, it had continued to snow somewhat. However, it appears that visibility, in general, at the time of the accident, was good.
 
 
 5
 On that day, the deceased, Brunner, was operating a highway snow plow. His unit, approximately 30 feet in length, was equipped with three clearing devices, a V-plow in front, a blade which ran beneath the unit, and a side wing blade extending out to the right from the corner of the cab. Each device was controlled by a lever within the cab which required a "little elbow grease" in order to manipulate it properly in cold weather. The driver was located some 20 feet back of the front end of the plow. Although it was the duty of the operator to clear the road as close to railroad tracks as possible, he was under instructions to raise all three clearing devices before crossing a railroad so as not to damage the tracks or tear up the crossing.
 
 
 6
 Defendant's snow plow train consisted of three units. In front was a snow plow and behind this a locomotive, followed by a caboose. The train was powered by the locomotive, but the emergency air brake could be set from the plow unit and the train could be "slowed down" by "throttling it down" from the plow. The cab of the plow was higher than that of the locomotive, and the windows of the locomotive were covered with ice and snow so that the two men in it were unable to see on to or close to the tracks ahead of the train. Hence, the only members of defendant's crew who could see ahead were two men in the plow unit, Kennedy, the roadmaster in charge of the snow clearing operation, and Foley, a section man.
 
 
 7
 Although a telephone was provided as a means of communication between the plow and the locomotive, there is no dispute that it was out of order and that the only possible means of communication were whistle signals. The locomotive whistle was not being used, and signals were given by an air horn located on the plow. Similarly, although there were a conflict in the testimony as to the exact point where the whistle was blown prior to reaching the crossing, there is no doubt that it was not sounded within 80 rods (1,320 feet) of the crossing as required by § 192.29(4) of the Wisconsin statutes.
 
 
 8
 Although there is a sharp controversy as to exactly what happened at the time of the collision, as stated previously, we shall adopt the version most favorable to the plaintiff. Prior to the accident, the unscheduled extra train was proceeding in a northeasterly direction. Brunner had been operating his snow plow in an easterly direction, moving slowly toward the crossing, and there is testimony to the effect that he was "very close" to the tracks when the train was at the bridge 1,195 feet away. An eye witness, Kirchoff, who saw the accident as he drove his automobile on the highway, testified that, when the train was at the bridge, the snow plow was "either on or about going on to the track." Roadmaster Kennedy said he first saw the grader when the train was about 1,000 feet from the crossing. There is no dispute but that Brunner, at some time prior to impact had stopped his grader with the front end of the plow in such a position that it was not far enough away from the tracks to clear the train. One of the most serious conflicts of fact arises in determining, in terms of distance, the first opportunity for observance by the train crew of the fact that the deceased had stopped in a potentially perilous position. Assuming that the crew might have discovered that the deceased had stopped too near the tracks, at a point when the train was 1,000 feet from the crossing, nevertheless the emergency brake was not set until the train was between 200 and 300 feet from the crossing. The train hit the highway plow dragging it to the northeast, tipping it end over end, throwing the rear end higher than the cab of the train and depositing it on the easterly side of the crossing, north of the highway. The cars stopped with the rear of the caboose at a point somewhere between 30 and 100 feet north of the crossing. Brunner was pinned in the cab and, apparently, had been killed instantly.
 
 
 9
 The jury in its special verdict found defendant negligent with respect to failing to sound the whistle, failing to ring the bell, and failing to maintain communication between the snow plow and the engine. However, it found further that these elements of negligence were not causal. It found defendant causally negligent with regard to the management and control maintained over the train. As to the deceased, the jury concluded that Brunner was not guilty of negligence with respect to maintaining a proper lookout or listening for the approach of trains. Further, it found him causally negligent in stopping his plow in a position so near the railroad that the vehicle was not clear of a passing train. As required by the Wisconsin comparative negligence statute, the jury further found the defendant 60% negligent and the deceased 40% negligent. The district court set aside the verdict and dismissed the complaint, concluding that, as a matter of law, the negligence of the deceased was at least as great as that of the train crew.
 
 
 10
 The primary issue before us is whether the district court was justified in finding that the negligence of each of the two parties was at least equal, so as to defeat recovery. We think that the court properly framed the issue in its statement that: "is a jury permitted to say that a train crew is guilty of more negligence in not discovering, some six hundred or more feet away from a crossing, that a snow plow was in a dangerous position than is the operator of the plow who had it under his own control and who was seated twenty feet from the front end of the plow?" There is no doubt that the finding that defendant's crew was guilty of negligence in the management and control of the train grew out of the employees' failure to discover the position of peril of the deceased within a time period wherein the accident might have been averted. Similarly, there is no question as to the negligence of the deceased. Hence, we must keep in mind that the query is not whether either party was negligent, but rather, whether, as a matter of law, the negligence of the deceased was at least equal to that of the defendant, under the comparative negligence law of Wisconsin.
 
 
 11
 The courts of Wisconsin are committed to the view that it is only in a rare case that the court is allowed to tamper with the jury's determination of the percentage of negligence. As was aptly stated in Wasikowski v. Chicago & N. W. Ry. Co., 259 Wis. 522, 523, 524, 49 N.W.2d 481, 482: "Ordinarily the existence of negligence and the comparison of the negligence of adverse parties are questions for the jury. [Cases cited.] When it appears as a matter of law that the negligence of the plaintiff is as great or greater than that of the defendant it is the duty of the court to so hold. Instances of this kind are rare." The rule was reiterated by this court in Cherney v. Holmes, 7 Cir., 185 F.2d 718, 720: "the determination of the jury with respect to comparative negligence will only be disturbed or reversed in rare instances, and then only in cases where the negligence of each was of the same character." To the same effect in Kraskey v. Johnson, 266 Wis. 201, at page 204, 63 N.W.2d 112, at page 114, where the Wisconsin Supreme Court stated: "`It must be possible from all the circumstances of the case as disclosed by the record for this court to be able to say that the negligences are equal in quality and that is why this court has said that it can rarely come to this conclusion. We are satisfied, however, that the court may not adopt a rule of thumb that will check off automatically lookout against lookout, control against control, etc., holding these items equal as a matter of law in every case.'"
 
 
 12
 On the other hand, not to be overlooked, are the many Wisconsin decisions where, on the particular facts involved, the courts have upset the jury's determination of percentages, notwithstanding the fact that the items of negligence were not of the same type. As stated in Quady v. Sickl, 260 Wis. 348, 351, 352, 51 N.W.2d 3, 5, 52 N.W.2d 134: "`Where, however, it appears that the negligence of the plaintiff is as a matter of law greater than that of the defendant, it is not only within the power of the court but it is the duty of the court to so hold.' * * * We have also considered the relative negligence of the parties where the respective failures were not of the same kind and character. Zenner v. Chicago, St. P., M. & O. R. Co., 219 Wis. 124, 262 N.W. 581; Sikora v. Great Northern R. Co., 230 Wis. 283, 282 N.W. 588; Patterson v. Chicago, St. P., M. & O. R. Co., 236 Wis. 205, 294 N.W. 63; Nayes v. Milwaukee Electric Railway & Light Co., 237 Wis. 141, 294 N.W. 812; DuBois v. Johnson, 238 Wis. 161, 298 N.W. 590; Menden v. Wisconsin Electric Power Co., 240 Wis. 87, 2 N.W.2d 856; Dinger v. McCoy Transportation Co., 254 Wis. 447, 37 N.W.2d 26; Gvora v. Carlson, 255 Wis. 118, 37 N.W.2d 848. No more can be read out of the precedents than that each case must be considered upon its peculiar facts." See also Ligman v. Bitker, 270 Wis. 556, 72 N.W.2d 340.
 
 
 13
 As to the special items of negligence involved herein, we agree with the district court that, in substance, they are of the same character. Essentially, both parties failed to discover, in time, the existence of a dangerous situation. Under the law of Wisconsin, the train crew had a right to assume that from the moment when the highway plow was first observed, the driver would remove himself from his potentially perilous position. In Bellrichard v. Chicago & N. W. R. Co., 247 Wis. 569, 582, 20 N.W. 2d 710, 715, the court approved in substance the following instruction to the jury in connection with the engineer's performance of his duty: "railroad trains can proceed only on the railroad track, cannot turn out to pass other travelers and that therefore, they are given the right of way and `the engineer is not obliged to check his speed or stop his train every time he sees a vehicle approaching which appears to be under control. The engineer has a right to assume that travelers on a highway approaching a railroad track will look and listen, up to the last opportunity before entering upon the track, to ascertain whether a train is approaching from either direction, and that they will not go on the track into danger when it is apparent that a train is approaching, and he is entitled to continue in that assumption until the contrary becomes apparent to a person exercising ordinary care, in the position of the engineer.'" (Emphasis supplied.) As previously stated, the jury here found that the deceased was not negligent as to lookout and listening; therefore he must have been well aware of the approach of the train. In this regard the words of the court, in Keegan v. Chicago, M., St. P. & P. R. Co., 251 Wis. 7, 12, 27 N.W.2d 739, 742, are pertinent: "Nothing there said deprives the engine crew of the right to assume that a traveler on a highway will look and listen and not go onto the track into danger when it is apparent that a train is approaching, and to continue this assumption until the contrary becomes apparent or he does something to indicate a contrary intention on his part." See also Roswell v. Chicago, M., St. P. & P. R. Co., 240 Wis. 507, 2 N.W. 2d 215.
 
 
 14
 As we have observed, it is clear from the jury's verdict that the crew did not discover in time that a perilous situation actually existed. But, as noted by the district court, considering that the deceased was seated merely 20 feet from the end of the plow which was too near the tracks, it seems obvious that he was in just as good as if not a better position than that of defendant's crew to discover and remove himself from his dangerous plight. Regardless of what the weather conditions may have been, each had an equal opportunity to see. Moreover, there is no substantial dispute as to the fact that there was no serious physical obstruction which impaired visibility. Certainly, as a matter of law, the failure of the deceased to realize that his snow plow was situated in a position which was too close to the tracks was at least equal in degree to the negligent acts of the defendant.
 
 
 15
 Plaintiff contends that either the so-called "Working Man Rule" or the "Diversion of Attention Rule" of Wisconsin law applies, each of which relieves a plaintiff to some extent from his duty to discover his position of peril. Assuming that one of the rules applies to the factual situation herein, we nevertheless conclude that, under the circumstances, our disposition of the issue should remain unchanged. Basically, these rules do not alter the fact that a person must exercise ordinary care under the circumstances existing at the time of the occurrence. Rather, they do nothing more than emphasize the particular matters which are to be taken into consideration in determining whether a party was exercising ordinary care. As stated in Dinan v. Chicago & M. Electric R. Co., 164 Wis. 295, 297, 298, 159 N.W. 944, 945: "A man who is engaged in work upon the highway cannot, if he performs his duty, spend a large part of his time in looking for the approach of street cars or other vehicles. In a busy street he would accomplish little if he did so. Of course he cannot let his thoughts go wool-gathering and expect all users of the highway to give place to him; he must exercise some vigilance; he must keep that lookout for vehicles and cars which an ordinarily careful man similarly situated would keep * * *." (Emphasis supplied.) Regardless of the nature of the work which Brunner was performing, we concur in the opinion of the district court that he was under a duty at least equal to that of the railroad crew to recognize the hazardous and perilous position wherein he had placed himself.
 
 
 16
 Finally, we come to the argument of plaintiff regarding the degree of care owed by the members of this non-scheduled train. It is plaintiff's position that the fact that the train did not have a fixed routine was a decisive element in determining the standard of care of the defendant's crew. The argument is not persuasive. There is no logical basis for holding that members of a non-scheduled train crew owe the public any greater standard of care under the existing circumstances than does the crew of a scheduled train.
 
 
 17
 Inasmuch as the trial court properly determined that the deceased, as a matter of law, was guilty of causal negligence at least equal in extent to that of the defendant, the judgment is affirmed.