**Edith P. REITAN, Plaintiff-Appellant,**

v.

**TRAVELERS INDEMNITY COMPANY, Defendant-Appellee.**

**No. 12540.**

United States Court of Appeals
Seventh Circuit.
May 20, 1959.

Donald D. Nelsen and Don F. Meloy, Madison, Wis., for appellant.

Willard S. Stafford and Robert W. Smith, Madison, Wis., Rieser, Stafford, Lesselyoung & Rosenbaum, Madison, Wis., of counsel, for appellee.

Before DUFFY, Chief Judge, and SCHNACKENBERG and HASTINGS, Circuit Judges.

HASTINGS, Circuit Judge.

Plaintiff-appellant, Edith P. Reitan, brought this action to recover damages resulting from injuries sustained while riding as a paying passenger in a common carrier motor bus insured by defendant-appellee, The Travelers Indemnity Company. There was diversity of citizenship vesting jurisdiction in the

district court. In a trial by jury and at the close of all the evidence the trial court granted defendant's motion for a directed verdict and entered judgment dismissing the complaint. This appeal followed. The sole issue before us is whether the trial court erred in taking the case from the jury and directing a verdict for defendant.

The complaint charged the bus driver with negligent operation of the bus and with failing to exercise the highest degree of care for plaintiff's safety consistent with the practical operation of the bus. The trial court found that there was insufficient evidence from which the jury could reasonably infer that defendant's bus driver was negligent, and further that as a matter of law there was no negligence on the part of the bus driver and that plaintiff was guilty of contributory negligence. Under the Wisconsin Comparative Negligence Statute, Wis. Stat. § 331.045 (1957), the legal effect of the latter finding was that the contributory negligence of plaintiff was, as a matter of law, equal to, or greater than, the negligence, if any, of defendant's bus driver. If the trial court was correct in either finding, the verdict was properly directed. We shall first consider the issue relating to the sufficiency of the evidence.

We are governed by the rule that, in a trial of issues of fact before a federal court and jury, if the evidence, with all the inferences that justifiably could be drawn from it, constitutes a sufficient basis for a verdict for the plaintiff or the defendant, as the case may be, then a motion for a directed verdict for the other party should be denied. Burg v. Great Atlantic & Pacific Tea Company, 7 Cir., 1958, 256 F.2d 613. We must determine "whether there is any evidence in the record, together with all reasonable inferences to be drawn therefrom, which would justify submission of this case to the jury." Ibid. Gunning v. Cooley, 1930, 281 U.S. 90, 92, 50 S.Ct. 231, 74 L.Ed. 720; Slocum v. New York Life Insurance Co., 1913, 228 U.S. 364, 369, 33 S.Ct. 523, 57 L.Ed. 879.

As this court said in Nelson v. Business Men's Assur. Co. of America, 7 Cir., 1939, 108 F.2d 363, 365:

"A question of law is thus presented which calls for a consideration of the record, not for the purpose of weighing the evidence, but for the purpose of determining whether there was some evidence. In the consideration of such a question, it is the duty of the court to take that view of the evidence, and all the inferences that may be properly drawn therefrom most favorable to the plaintiff, and, if the evidence is of such a character that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury."

See also Smith v. J. C. Penney Company, 7 Cir., 1958, 261 F.2d 218, 219.

Under either the federal rule or the Wisconsin rule a "scintilla" of evidence is not sufficient to require the submission of an issue to a jury. The more reasonable rule is " 'that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.' " Gunning v. Cooley, 1930, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720. Further, while we must consider the evidence in the light most favorable to the plaintiff, as Judge Lindley pointed out in Shaw v. Edward Hines Lumber Co., 7 Cir., 1957, 249 F.2d 434, 439: " '[T]his does not mean that we may ignore uncontradicted, unimpeached evidence supporting defendant's position.' "

While we hold to the view that in most cases in which a motion for a directed verdict is made at the conclusion of all the evidence, it would be better practice for the trial judge to withhold his ruling until after the jury has returned a verdict, and then, if he thinks

proper, set aside the verdict as not supported by any substantial evidence and grant the motion pursuant to Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A., thus giving the reviewing court on appeal the opportunity to reinstate the verdict if it disagrees with him, Shaw v. Edward Hines Lumber Co., supra; yet, a trial judge may, in a proper case, direct the verdict in the first instance.

■ While the nature and scope of our review is determined by federal law, the substantive question of causal negligence is governed by Wisconsin law. Before examining the applicable Wisconsin cases, we shall first state the facts in the light most favorable to plaintiff and in doing so we can do no better than to set out the substance of her own testimony.

On the day of the accident in question plaintiff was 53 years of age and employed as an instructor and supervisor of nurses at the Wisconsin General Hospital in Madison, Wisconsin. She purchased a bus ticket to Milwaukee, Wisconsin, and entered the bus at the Union Bus Station in Madison accompanied by a friend, Dorothea Frye. Plaintiff was carrying a purse and a small overnight bag. They chose a seat about halfway down the aisle of the bus. Plaintiff put her overnight bag on the luggage carrier rack directly overhead above the seat. Mrs. Frye sat by the window and plaintiff sat on the aisle side. After the bus reached the city of Milwaukee and when about twenty-eight blocks from her destination plaintiff was injured in the manner set out in her following testimony:

" * * * I wanted to be ready to get off the bus. * * * I got up there to get my bag down, so I would be ready to get off when we got into the station. * * * I was standing, of course, facing the windows. * * * And I had one hand on the seat back, and I reached up with my other arm, up to get my bag with the other arm. * * * The bus stopped with a sudden lurch. And

I quickly grabbed the seat ahead of me with my other hand. * * * Well, I was—I had been reaching to get my bag, and instead of getting —when the bus stopped so suddenly, I grabbed instinctively for the other seat, which was right by me, and I hung on for dear life. * * * Well, I was trying to keep from falling, and I was depending on that cover that was over that seat. [The "cover" was a plastic strip which slips over the top of the seat back and is held by two elastic bands.] I had it tightly in my hand, and then it came apart where it was sewn on the sides—it pulled entirely apart, and then let me go. So I tried to save myself by taking steps backward, but I couldn't, and so I fell. I struck my arm on the metal base of the seat opposite the driver * * * and I fell on my back * * *. I refused help, and got up by myself and went back to my seat."

On cross-examination plaintiff testified that she had no idea why the bus stopped suddenly; that she was not watching the bus driver and was not looking out of the window at the street; that she was thinking only of getting ready to get off the bus; that she did not claim the bus was traveling at an unreasonable rate of speed at the time of the accident; that the bus driver did nothing unusual or extraordinary in any way until the stop; and that she was not paying any attention to the operation of the bus and did not know what happened just prior to the accident.

Plaintiff called three other witnesses, Mrs. Frye and two of her doctors. Mrs. Frye testified that if she were asked the same general questions asked of plaintiff that she would make the same answers and she testified to nothing new or different with reference to the accident. The doctors detailed plaintiff's physical condition and their treatment of her alleged injuries. On direct examination Doctor Golden testified that he took down

the following history of the accident as given to him by plaintiff:

"I was standing about in mid-bus, facing the windows, holding onto the seat back, when the bus suddenly stopped. The cover on the seat back tore apart, so that my grip was released. I somewhat stumbled backward toward the center of the bus, and after two or three such steps fell, striking my left shoulder and arm on the base of a seat. In the course of this stumbling, I moved toward the front of the bus, so that I came to lie on the floor about even with the stairwell."

Plaintiff also testified that she did hear the sound of air brakes but did not hear any tires screeching.

As pointed out in the Shaw case, supra, it is properly within the scope of our review to note the following additional uncontroverted facts: At the time of the accident in question the bus was traveling at less than the legal speed limit of 30 miles per hour and was slowing down for a street intersection about one-half block away; the bus driver was not confronted with any emergency traffic situation; and there was no testimony showing that any passenger other than plaintiff was adversely affected by the movement of the bus when plaintiff fell.

■■■ In Wisconsin a common carrier of passengers owes to its patrons the highest degree of care to avoid injury to them consistent with the practical operation of the vehicle. Hanley v. Milwaukee Electric Ry. & Light Co., 1935, 220 Wis. 281, 285, 263 N.W. 638, 640. It is well-established that the sudden jerking of a common carrier vehicle in starting or stopping does not, in itself, establish negligence. Tabak v. Milwaukee Electric Ry. & Light Co., 1915, 161 Wis. 422, 425, 154 N.W. 694. "It is not sufficient that the witnesses merely describe the jerk as unusual or extraordinary. *There must be some corroborating circumstance.*" (Our emphasis.) Lutzenberger v. Milwaukee Electric Ry. & Light Co., 1937, 224 Wis. 44, 47, 271 N.W.

409, 410. See also Hanley v. Milwaukee Electric Ry. & Light Co., supra, 220 Wis. at page 283, 263 N.W. at page 639.

Plaintiff relies strongly upon Lutzenberger v. Milwaukee Electric Ry. & Light Co., supra, as authority for her contention that her fall in the instant case is such a "corroborating circumstance," when coupled with plaintiff's testimony that the bus gave a sudden lurch or stop, to create an inference of negligence on the part of the bus driver. In Lutzenberger plaintiff testified that " 'I stepped into the aisle and * * * I was thrown by this severe jolt and jerking of the car. Both of my feet were thrown from under me and I was thrown with great force upon by back. * * * I struck my head and my entire body. * * * I had been on street cars like this one before this one. There would be a certain amount of jerking in the motion of the car, but nothing like this jolt. I never experienced anything like that before.' " id. at page 46, 271 N.W. at page 410. Another witness for plaintiff testified that " '[t]he car was nearing the corner and the motorman slackened the car and it moved very slowly and I should judge about ten feet from the corner the car almost came to a stop when he gave a very severe jolt and Mrs. Lutzenberger fell backward in the car. * * * It was a very unusual jerk, a very hard jolt.' " Ibid. The court held that the fall of the plaintiff was such a corroborating circumstance *in that case.*

Plaintiff also cites Markowitz v. Milwaukee Electric Ry. & Light Co., 1937, 224 Wis. 347, 271 N.W. 380, 382, as support for the same proposition. In Markowitz plaintiff was a passenger in a street car and as it approached a street intersection she proceeded to the front platform and prepared to alight. She testified that the motorman opened the exit door before stopping and, in the process of stopping, caused the car suddenly to be jerked resulting in her being thrown out upon the pavement. There was no emergency situation confronting the driver at the time; she walked to the front platform without difficulty; she

"had both feet down flat on the platform" as she stood in front of and facing the exit doorway for about a minute before being thrown out; and, as soon as the street car gave the jerk, she fell. She said that the movement which caused her to lose her balance was "an awful jerk; just jerked me right out." A jury returned a verdict for plaintiff the amount of which was reduced by the trial court. The court on appeal held there was sufficient proof to take the case to the jury but that the evidence bearing upon the negligence of defendant was meager and for that reason it remanded for a new trial.

We think that Lutzenberger and Markowitz are distinguishable on their facts from the case at bar. They are not authority for the proposition that *any fall* is sufficient to take the case to the jury, and, indeed, plaintiff does not contend that such is the law. They merely hold that the physical facts relating to the fall of a *standing* passenger corroborated plaintiff's testimony that there was something extraordinary or unusual about the fall caused by the movement of the bus from which an inference of negligence could be drawn. In each of those cases the plaintiffs were virtually knocked off their feet. Plaintiff here concedes that the fall must be extraordinary or unusual.

 We hold that in this case there was no evidence from which the jury could reasonably infer that defendant's bus driver was negligent and that the trial court did not err in taking the case from the jury and directing a verdict for defendant.

In view of this holding we do not reach the issue of whether plaintiff was guilty of contributory negligence as a matter of law.

The judgment of the district court is

Affirmed.

1. The only precedent cited in the Shaw case is our opinion in Brunner v. Minneapolis, St. Paul & Sault Ste. Marie

SCHNACKENBERG, Circuit Judge (concurring).

I agree with the result reached by Judge HASTINGS, but not with all of his reasons therefor.

Judge Hastings relies on the following language in Shaw v. Edward Hines Lumber Co., 7 Cir., 249 F.2d 434, 439: "[T]his does not mean that we may ignore uncontradicted, unimpeached evidence supporting defendant's position." If we assume the correctness of the holding in the Shaw case,[1] it is apparent that the quoted language is not applicable to the case at bar. In order to rely on the Shaw case, the majority opinion treats as "uncontroverted facts", established by the driver's testimony, that at the time of the accident the bus was traveling within the speed limit and "was slowing down for a street intersection about one-half block away". As a matter of fact, plaintiff testified that at that time the bus stopped with a sudden lurch, and she grabbed the seat ahead of her with one hand, to keep from falling, and the plastic slip cover of the seat came apart and let her go, whereupon she fell on her back.

It is obvious that the testimony of the bus driver as to the movement of the bus prior to plaintiff's falling was not uncontroverted. Clear contradiction exists between that evidence and plaintiff's testimony. Her version tended to prove the bus company's negligence in the operation of the bus, while the driver's testimony tended to negative that alleged fact; in fact, it was admissible for no other purpose. This situation is a commonplace and classic example of contradiction in evidence. That being so, the rule of the Shaw case, assuming it to be sound, has no application to this case. The evidence on behalf of plaintiff when considered with that offered on behalf of defendant, on the question of the bus company's alleged negligence, presented a jury question, under the

R. Co., 7 Cir., 240 F.2d 608, 609. We have found no other support.

well-established rule that, on a motion by defendant for a directed verdict, at the close of all the evidence, the court must accept as true all facts (favorable to plaintiff) which the evidence tends to prove and draw against the defendant all inferences which the jury might reasonably draw, and, in case of conflict in the evidence, consider only that which is favorable to the plaintiff. Mescall v. W. T. Grant Co., 7 Cir., 133 F.2d 209, 210. In deciding a motion for a directed verdict, where the evidence is conflicting, evidence favorable to movant is, in general, to be disregarded, and only evidence favorable to the adverse party is to be considered. 88 C.J.S. Trial § 257, p. 664.

However, an affirmance of the judgment of the district court is required on the ground that the evidence, when tested by the aforesaid rule, proves as a matter of law that plaintiff was guilty of contributory negligence, which was as great or greater than that of the bus company. 2 Wis.Stat. (1957) § 331.045, ch. 331, and Wasikowski v. Chicago & N. W. Ry. Co., 259 Wis. 522, 49 N.W.2d 481.

The district court properly commented,

"If she [plaintiff] had remained in her seat, this accident never would have occurred. Why she got up out of her seat when 28 blocks away from the bus depot, her destination, is something I don't understand. * * * And when a passenger stands up in the aisle of a moving bus, she incurs the risk incident to standing up there. It is a matter of common knowledge that when you are standing in a moving bus or a moving coach, that you are easily thrown off balance, and you may fall unless you have something to reach for. It is a matter of common knowledge, as I said, that it is difficult to maintain one's equilibrium while standing on a moving bus, particularly when the bus is in the process of stopping. * * * The Court finds as a matter of law that

there was no negligence on the part of the bus driver; and the Court is also firmly of the opinion that the plaintiff was guilty of contributory negligence in standing in that aisle in a moving bus under the circumstances in which she did."

It is my opinion that plaintiff's negligence was greater than the negligence of the bus company, if any. The language of the trial court does not expressly show that he believed plaintiff's contributory negligence was greater than that of the bus company, but he did hold that she was guilty of contributory negligence and that the bus company was not negligent, which means the same thing, for the purpose of this appeal.

I would affirm.