Vernon L. HAAG, Plaintiff-Appellant,

v.

INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION, a Maryland corporation, Defendant-Appellee.

No. 14776.

United States Court of Appeals Seventh Circuit.

March 1, 1965.

Rehearing Denied April 2, 1965.

Schnackenberg, Circuit Judge, dissented.

J. A. Bruggeman, Otto E. Grant, Jr., Barrett, Barrett & McNagny, Fort Wayne, Ind., for plaintiff-appellant.

Thomas W. Yoder, of Campbell, Livingston, Dildine & Haynie, Fort Wayne, Ind., for defendant-appellee.

Before DUFFY, SCHNACKENBERG and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

This case is here for the second time. Plaintiff, Vernon L. Haag, brought suit originally in the state court (subsequently the cause was removed to the U. S. District Court) to recover damages arising out of the refusal of the defendant, International Telephone and Telegraph Corporation, to honor his attempted exercise of a stock option. The District Court granted summary judgment for defendant and plaintiff has taken this appeal.

On or about August 11, 1957, defendant had engaged plaintiff as an employee. On September 11, 1957, defendant gave plaintiff an option to buy certain shares of its common stock "only after two years of the Optionee's continued employment with the corporation or one of its subsidiaries."

In his initial suit, plaintiff contended that defendant's determination that plaintiff's employment terminated before the passage of the necessary two years failed to consider an alleged oral contract of employment for a period of 90 days, made on or about June 22, 1959.

In this Court's opinion on the original appeal, No. 14134, filed November 12, 1963, 324 F.2d 205, we stated (p. 208):

"We do, however, agree with the plaintiff that if, in fact, on and after June 22, 1959, he had a contract of employment with the defendant for a fixed and definite term

embracing the ninety day period ending September 20, 1959, as he alleges and claims he did, and if his discharge on July 28, 1959, was without just cause and for the purpose of depriving him of attaining the right to exercise his stock purchase option, the defendant is liable for such damages as may have been occasioned thereby."

The cause was remanded to the United States District Court where it was tried to a jury. The jury found for the plaintiff and answered "yes" to the following special interrogatory:

"QUESTION: Did the plaintiff, Haag, and the defendant International Telephone and Telegraph, on June 22, 1959, enter into an oral contract of employment for a fixed and definite term embracing the ninety-day period ending September 20, 1959?"

Defendant had filed motions for a directed verdict at the close of plaintiff's evidence and at the close of all the evidence, asserting that the evidence was insufficient as a matter of law to establish that plaintiff had a contract of employment for a fixed and definite term. The District Judge reserved his ruling on these motions, following the good practice recommended by this Court in Reitan v. Travelers Indemnity Co., 1959, 267 F.2d 66, 68. Pursuant to the defendant's motion, the District Court set aside the jury's verdict and entered judgment for defendant notwithstanding the verdict, which the District Court found to be clearly against the greater weight of the evidence and not such as might have been reasonably reached.

The District Judge for that reason also granted (conditionally) the defendant's motion for a new trial.

It was not contested that plaintiff's original hiring was at will. Plaintiff asserted that a change in his employment occurred at a meeting with Delbert L. Mills, an executive vice-president of one of defendant's divisions at Clifton, New Jersey, on June 22, 1959. He agreed that he was then removed from his prior assignment at defendant's Fort Wayne location, so that someone else could take over that job. He said that he was instead placed on a special assignment for 90 days which would permit him to complete the two years' employment necessary to exercise his stock option. He states that the arrangement was such that if he found another position he was free to leave; that it was at his option whether or not to remain in the defendant's employ for the whole of the 90 days, but that defendant was bound. Plaintiff testified that Mr. Mills did not ask him to hold himself available in any capacity after June 22, 1959, but that he himself had stated that he would be available. He testified that defendant had plaintiff's home address and telephone number and that he could be reached from there. Nobody described the duties of the "special assignment" to him and plaintiff never asked Mr. Mills what the special assignment was, or ever reported to Mr. Mills on this special assignment after the aforesaid meeting of June 22, 1959. Plaintiff also testified that at the meeting on June 22, Mr. Mills told plaintiff to start looking for other employment immediately.

After cleaning out his desk at Fort Wayne on June 23, 1959, plaintiff never performed any services for defendant and, to his knowledge, never went back to the defendant's premises except when he attempted to exercise his stock option. It was understood that he was to be allowed to devote as much time as he wished to his search for new employment. Plaintiff testified further that he did shortly thereafter seek new employment, travelling extensively throughout the United States through June, July and August, 1959.

The defendant's witnesses, Mr. Mills and another vice-president, Robert Chasen, testified that at the meeting they had with plaintiff on June 22, 1959, he was relieved of all responsibility but that Mr. Mills agreed to keep him on the payroll for a period not to exceed 90 days while he sought other employment; that there was no "special assignment," that phrase being used only to create the impression that plaintiff was currently employed for its effect on plaintiff's efforts to secure new employment. Plaintiff did not deny that this explanation was given to him, but testified that he did not recall its being said.

Plaintiff testified that there was no mention of the option at the meeting June 22, 1959.

Under date of July 28, 1959, plaintiff received a letter from Mr. Mills reading as follows:

"Dear Vernon, Supplementing our previous oral discussion it has been decided to terminate your employment immediately as of today, July 28, 1959. We are instructing Mr. Brunton to issue a check for $5,462, reduced by necessary withholding, as a final lump sum payment for separation allowance. Since you are not eligible to exercise your stock option would you please return pertinent papers to me at your earliest convenience. With very best wishes for your future activities, very truly yours—"

to which he replied that he had continuously remained available to the company as an employee and would remain available until September 21, 1959. He did not in fact accept any other employment during the 90-day period.

The District Court applied the standards of Shaw v. Edward Hines Lumber Co., 7 Cir., 1957, 249 F.2d 434, 439, and Lambie v. Tibbits, 7 Cir., 1959, 267 F.2d 902, 903, that in ruling on a motion for judgment notwithstanding the verdict the evidence must be considered in the light most favorable to the plaintiff with all conflicts resolved in his favor and every possible legitimate conclusion or inference drawn in his behalf. Wisconsin Liquor Co. v. Park & Tilford Distillers Corp., 7 Cir., 1959, 267 F.2d 928, 930.

The District Judge concluded that:

"[T]he evidence adduced at the trial of this cause, when viewed in the light most favorable to plaintiff, is such that reasonable men could not differ as to the conclusions to be drawn therefrom. The burden was upon the plaintiff in this action to prove the existence of the essential elements of a contract of employment for a fixed and definite term of ninety days. The Court concludes that the evidence adduced on the part of plaintiff fails to establish the elements essential to the formation of such a contract; hence, the verdict of the jury cannot stand.

"It is elementary contract law that there must be an offer and an acceptance thereof in order to constitute a contract. The evidence herein fails to show any such offer by defendant to plaintiff, and without an offer there can be no acceptance. The conversation of June 22, 1959 between plaintiff and representatives of defendant, during which his original employment was terminated, indicates that plaintiff stated his willingness to remain available, but he was not so requested by defendant. He could not, therefore, accept an offer which was never made to him by defendant. Nor is there any other evidence in the record which could support the existence of an offer and acceptance thereof.

\* \* \* \* \* \*

"The terms of the alleged contract in question are so vague, indefinite, and uncertain that a strained construction of the meager evidence adduced on this point would be required to give them any meaning. Indeed, after an examination of the testimony of the plaintiff, it would take a vivid imagination to ascertain that there were any terms at all dis-

cussed at the time the alleged contract came into existence. His testimony reveals that the so-called "special assignment" was never reduced to any definite understanding —his duties were never mentioned, nor was the nature of the 'special assignment' ever determined. Yet, plaintiff contends that because he stated that he 'would remain available', his duties were thereby impliedly shown and that this constitutes a sufficient definiteness of terms to satisfy the contract requirement. While a contract to continue an existing employment relationship would not require the same degree of certainty as a new contract between strangers, the alleged continuation here was on 'special assignment' unrelated to any activity of either the employer or employee.

\* \* \* \* \* \*

"Finally, the verdict of the jury must be set aside for the further reason that the evidence completely fails to establish the mutuality which is also necessary to the establishment of a valid contract of employment. In Meadows v. Radio Industries, 222 F.2d 347 (7th Cir. 1955), an action by plaintiff for breach of an employment contract, the trial court directed a verdict for defendant and entered judgment against the plaintiff. In affirming the decision of the trial court, the Court of Appeals for the Seventh Circuit, Judge Lindley speaking, said, at p. 348:

> "'In the present case, a careful examination of the record discloses that there was not the slightest bit of evidence that plaintiff ever agreed that he would continue in the employment of defendant for any specified time. *In other words, he had a right to terminate his employment at any time and did not promise to perform for any definite length of time. Therefore, the contract*

*could not have been enforced against him and was lacking in mutuality. Consequently, he cannot enforce it against defendant.'"* (Italics added.)

Plaintiff contends that the mere fact, which he had admitted, that Mr. Mills did tell him there was no place for plaintiff in the organization does not mean that the defendant might not have had need of plaintiff's services during the critical period of a change in top management. However, as the District Court noted, according to plaintiff's own testimony, plaintiff was free to leave at any time whether defendant needed him or not. Defendant could not have required plaintiff to remain as an employee.

We agree with the District Judge that no valid contract of employment for a fixed and definite term of ninety days came into existence between plaintiff and defendant on June 22, 1959, and that the verdict of the jury was properly set aside.

With respect to plaintiff's assertion that defendant answered an interrogatory improperly and thus concealed evidence, we believe, as did the Trial Court, that the interrogatory was susceptible of two meanings and that defendant's interpretation, though not that of plaintiff, was nevertheless reasonable.

The judgment of the District Court is affirmed.

Affirmed.

SCHNACKENBERG, Circuit Judge (dissenting).

In the prior appeal before this court, we held that (1) if plaintiff had a contract of employment with defendant for a fixed and definite term embracing the ninety-day period ending September 20, 1959, and (2) if his discharge was without just cause and for the purpose of depriving him of the right to exercise his stock purchase option, defendant would be liable for damages (stipulated to be $34,000) occasioned thereby. 324 F.2d 205, 208. At 209, we held that

under the law the first question presented a genuine issue of material fact. On remand, the jury, by special interrogatory, determined that question in favor of plaintiff, and returned a verdict of $34,000.

The determination of the issues of fact was for the jury and the court below invaded the jury's exclusive province to decide the factual questions. The evidence does not warrant such invasion. Taking the evidence in the light most favorable to plaintiff, it is obvious that defendant sought to deprive plaintiff of a very lucrative stock purchase option shortly before his right thereto was to mature.

I would remand this case to the district court with directions that it vacate its order granting defendant's motion for judgment notwithstanding the verdict, reinstate the verdict of the jury in favor of plaintiff and enter judgment thereon.